STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-734

THEODULE P. NOEL, JR., ET AL.

VERSUS

THEODULE PIERRE NOEL, SR., ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 2013-96657
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

VAN H. KYZAR
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Elizabeth A. Pickett, and Van H. Kyzar, Judges.

JUDGEMENT VACATED IN PART;
REVERSED IN PART; AND REMANDED.

Ralph E. Kraft
Bryan E. Legé
Kraft Legé LLC
600 Jefferson Street, Suite 410
Lafayette, LA 70501
(337) 706-1818
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Theodule P. Noel, Jr.
    Christine Noel Devenport
    Catherine A. Noel, Individually and as Executrix of the Succession of
    Irene Joyce Trahan Noel

R. Chadwick Edwards, Jr.
Edwards & Edwards
P.O. Box 217
Abbeville, LA 70511-0217
(337) 893-2884
COUNSEL FOR DEFENDANTS/APPELLEES:
    Samuel J. Noel, Individually and as Executor of the Succession of
    Theodule P. Noel, Sr.
    Pamela A. Noel

Gary McGoffin
Jonathan R. Villien
Durio, McGoffin, Stagg & Ackerman, P.C.
P.O. Box 51308
Lafayette, LA 70505-1308
(337) 233-0300
COUNSEL FOR DEFENDANTS/APPELLEES:
    Samuel H. Shuffler, M.D.
    Ross Hebert

**KYZAR, Judge.**

The plaintiffs-appellants, Theodule P. Noel, Jr., Christine Noel Devenport, and Catherine A. Noel, individually and as executrix of the Succession of Irene Joyce Trahan Noel, appeal from a trial court judgment finding that their mother had the mental capacity to execute a power of attorney and that the power of attorney authorized the defendant-appellee, Samuel J. Noel, to self-deal. For the following reasons, we vacate in part; reverse in part; and remand for further proceedings.

## DISCUSSION OF THE RECORD

The facts of this matter were fully addressed in our prior opinion, *Noel, Jr. v. Noel, Sr.*, 15-37 (La.App. 3 Cir. 5/27/15), 165 So.3d 401, *writ denied*, 15-1121 (La. 9/18/15), 178 So.3d 147, and we adopt those facts as though fully incorporated herein. In addition to other rulings, we reversed the trial court's sua sponte finding that Theodule P. Noel, Jr., Christine Noel Devenport, and Catherine A. Noel (the Appellants) had no right of action; its grant of summary judgment in favor of Theodule P. Noel, Sr., Samuel J. Noel, and Pamela A. Noel (the Appellees)[1] on the issue of the authenticity of Mrs. Noel's January 12, 2006 power of attorney; and its denial of the Appellants' motion to file a third supplemental and amending petition.

Upon remand, a trial on the merits was held on January 25, 2016, which was limited by the trial court to whether Mrs. Noel possessed the necessary mental capacity to execute the January 12, 2006 power of attorney and whether the power of attorney allowed self-dealing by Samuel. At the close of the trial, the matter was taken under advisement, after which the trial court rendered written reasons on

---

[1] Since this opinion, Theodule P. Noel, Sr. passed away and Samuel J. Noel, as the executor of his father's succession, was substituted in his place.

February 26, 2016, which affirmed its preliminary rulings to sever/bifurcate several matters, including the Appellants' farm-lease claims. The judgment held that Mrs. Noel possessed the necessary mental capacity to execute the January 12, 2006 power of attorney. It also held that the power of attorney authorized Samuel to sell Mrs. Noel's immovable property to himself and that her authorization for the sales was unnecessary because she benefited from the sales. A written judgment was recorded on April 6, 2016. It is from this judgment that the Appellants perfected their appeal.

The Appellants list seven assignments of error committed by the trial court:

1.  The District Court committed manifest error in finding that Mrs. Noel had the requisite capacity to execute the [power of attorney] on 12 January 2006.

2.  The District Court committed manifest error in finding that the [power of attorney] bearing the date 12 January 2006 was an authentic act.

3.  The District Court committed legal error in finding that Samuel J. Noel had the authority to self deal pursuant to the [power of attorney] bearing the date 12 January 2006 where there was no language in the [power of attorney] granting such authority.

4.  The District Court committed legal error/manifest error in finding under the power of attorney that Samuel J. Noel's payment of the sale price of the property fulfilled a fiduciary duty to Mrs. Noel, though he judicially admitted the motive of Samuel J. Noel's sale of the property to himself was for his personal benefit, to not inconvenience his farming operations.

5.  The District Court abused its discretion in excluding relevant and admissible evidence offered by Plaintiffs/Appellants as respects Mrs. Noel's capacity and the lack of authenticity of the [power of attorney], made the subject of the proffers by Plaintiffs/Appellants.

6.  The District Court abused its discretion in dismissing Plaintiffs/Appellants' claims for fraud, breach of fiduciary duty, conversion, simulation and a claim for an accounting by the mandatory, Samuel J. Noel, without allowing Plaintiffs/Appellants to conduct relevant discovery or present evidence.

2

7. The District Court abused its discretion in severing/bifurcating and precluding Plaintiffs/Appellants' right to conduct discovery and setting the trial date, denying Plaintiffs/Appellants the opportunity to conduct relevant discovery.

In answer to the appeal, the Appellees filed an exception of no cause of action asserting that the Appellants failed to state a cause of action for damages on behalf of Mrs. Noel's estate because the trial court held that Mrs. Noel suffered no damages since each property sold for its appraised value. The Appellees also moved to strike the proffer of evidence filed by the Appellants pertaining to Mrs. Noel's capacity to execute the January 12, 2006 power of attorney.

## OPINION

The law pertaining to "power of attorney" was laid out by the second circuit in *Tatum v. Riley*, 49,670, pp. 6-7 (La.App. 2 Cir. 5/6/15), 166 So.3d 380, 384 (alteration in original), as follows:

> A power of attorney is a common law term, whereas our civil code uses the term procuration to designate the same contractual relationship. La. C.C. art. 2986, Revision Comments (a); *In re Succession of Hunt*, 47,372 (La.App.2d Cir.9/20/12), 135 So.3d 654. As defined by La. C.C. art. 2987, "[a] procuration is a unilateral juridical act by which a person, the principal, confers authority on another person, the representative, to represent the principal in legal relations." A procuration is governed by the rules applicable to mandate to the extent that those rules are compatible with the nature of the procuration. La. C.C. art. 2988.
>
> The rules governing mandate allow the principal to confer general authority for the mandate "to do whatever is appropriate under the circumstances." La. C.C. art. 2994; *Hunt, supra.* However, some actions require express authorization. The authority to alienate, encumber, acquire, or lease a thing must be express. La. C.C. art. 2996. Express authorization is also required for the agent to make an *inter vivos* donation on behalf of the principal. La. C.C. art. 2997(1); *Hunt, supra.* Self-dealing also requires express authorization as provided by La. C.C. art. 2998, which states, "A mandatary who represents the principal as the other contracting party may not contract with himself unless he is authorized by the principal, or, in making such contract, he is merely fulfilling a duty to the principal."

3

Although this court, in *Succession of Love*, 16-245 (La.App. 3 Cir. 9/28/16), 201 So.3d 1027, held that the authority to self-deal may be either verbal or in writing, because the authority to self-deal at issue involves the sale of immovable property, that authority must be specific and in writing pursuant to La.Civ.Code arts. 2992 and 2996.[2]

Because a power of attorney is a contract, we interpret its provisions pursuant to the rules of contract interpretation, which were laid out by the supreme court in *Prejean v. Guillory*, 10-740, pp. 6-7 (La. 7/2/10), 38 So.3d 274, 279 (alteration in original) (emphasis added):

> "[W]hen a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law." *Sims v. Mulhearn Funeral Home, Inc.*, 07-0054, p. 10 (La.5/22/07), 956 So.2d 583, 590. "Interpretation of a contract is the determination of the common intent of the parties." La. Civ.Code art. 2045. *The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. Sims*, 07-0054 at p. 7, 956 So.2d at 589; *McConnell v. City of New Orleans*, 35 La. Ann. 273 (1883). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ.Code art. 2046. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911, p. 5 (La.1/14/94), 630 So.2d 759, 763. Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. *See Maloney v. Oak Builders, Inc.*, 256 La. 85, 98, 235 So.2d 386, 390 (1970); *McConnell*, 35 La. Ann. at 275. Most importantly, a

---

[2] La.Civ.Code art. 2993 provides:

The contract of mandate is not required to be in any particular form.

Nevertheless, when the law prescribes a certain form for an act, a mandate authorizing the act must be in that form.

La.Civ.Code art. 2996 provides:

The authority to alienate, acquire, encumber, or lease a thing must be given expressly. Neither the property nor its location need be specifically described.

4

contract "must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance." *Lambert v. Maryland Cas. Co.*, 418 So.2d 553, 559 (La.1982).

## *Appellees' Exception of No Cause of Action*

At the outset, we note that the Appellees first raised their exception of no cause of action in the prior appeal of this matter. *Noel*, 165 So.3d 401. There, with regard to the Appellants' suit to cancel real-estate transactions, the Appellees argued that the Appellants had no cause of action for an anticipated inheritance and because they neither pled nor proved that Mrs. Noel sustained damages in order to maintain a survival action. However, this court held that the Appellants had both a cause of action and a right of action under La.Civ.Code art. 1926, to bring suit against the Appellees because "[w]hen the original petition was filed, the succession of Mrs. Noel was not under administration and Appellants properly brought this suit as heirs to Mrs. Noel." *Id.* at 409. Based on our prior ruling, we find no merit in the Appellees' exception of no cause of action.

## *Appellants' Assignment of Error Number Three*

In their third assignment of error, the Appellants argue that the trial court legally erred in finding that Samuel was authorized by Mrs. Noel to self-deal. Because we find merit in this argument, we will address it first.

Mrs. Noel's January 12, 2006 power of attorney contains the following provisions:

> **Irene Joyce Trahan Noel** declared that she does by these presents make nominate, ordain, authorize, constitute, and appoint, and in [her] place and stead, depute and put her son, **Samuel J. Noel** to be her true and lawful attorney in fact, general and special, giving, and by these presents granting unto said Attorney full power and authority for and in the name and on behalf of Constituent, to do, perform, conduct, manage and transact all and singular the affairs, business and concerns of Constituent, of whatever nature or kind, and in particular, the following:

5

1. For and on behalf and in the place of Constituent to receive, endorse, deposit or cash any checks payable to Constituent whether the same be made payable to Constituent individually or jointly with Attorney or others and to draw checks and/or drafts on any account of Constituent.

2. To purchase for and on behalf of Constituent an automobile the make, type and style of which is solely in the discretion of Attorney, or any other movable, and in connection therewith to sign for and on behalf of Constituent in [her] name, all necessary papers and documents in connection therewith, such as bills of sale, conditional sales contract, and to secure all or any portion of the purchase price of said vehicle or movable by means of chattel mortgage upon said vehicle or movable and to execute all necessary documents in the premises in connection therewith such as chattel mortgages, notes, pledges, pawns and hypothecations.

3. To sell for and on behalf of Constituent for such consideration as Attorney deems satisfactory, any movable property belonging to Constituent.

4. To collect any debts due and owing unto Constituent.

5. To appear before all Courts of law and equity, there to do, prosecute and defend, as occasion shall require, and to compromise, compound and agree in the premises, by arbitration or otherwise, as the said Attorney shall in his or her discretion see fit; to apply for and obtain all and any writ of arrest, attachment, sequestration, injunction, prohibition, provisional seizure, mandamus, error and generally, all process of law and appeal; give the requisite security and sign the necessary bonds in all the cases in which the same may be required by law.

6. To purchase for and on behalf of Constituent any real estate which in the sole discretion of Attorney is for the best interest of Constituent.

7. To execute for and on behalf of Constituent oil, gas and mineral leases bearing upon and affecting any property belonging to Constituent and situated in the Parish of Vermilion, Louisiana.

6

8. To execute for and on behalf of Constituent any right-of-way agreements for pipelines, power lines, road ways or telephone cables, over and upon and affecting any property belonging to Constituent for such terms as Attorney may deem satisfactory.

9. To receive for and on behalf of Constituent any royalties, rentals, damage payments[,] rights-of-way fees, etc., and deposit the same to the account of Constituent.

10. To do, perform, conduct, manage, and transact all and singular the affairs, business and concerns of Constituent of whatever nature or kind, without any exception or reservation whatever.

11. To make, accept, draw and endorse promissory notes and bills of exchange in the name of Constituent, and to bind the said Constituent by acknowledgment of debt, promises to pay and engagements of all kinds.

12. To sell, transfer, assign and convey to any and all person or persons or corporation, institutions, with all legal warranties, all or any parts of the real, personal or mixed estate of the said Constituent, either judicially or extra-judicially, for such price and upon such terms and conditions that the said Attorney may think fit; to receive the price of such sales, and to grant receipt and acquittance therefor.

13. To encumber, hypothecate or mortgage all or any part or parts of the property, movable or immovable belonging to said Constituent; to consent to the erasure and cancellation of all mortgages and privilege inscriptions in favor of or against the said Constituent.

14. To apply for administration of all successions and estates in which the said Constituent may be interested, and to demand all orders, obtain all decrees and judgments that may be necessary, and to finally settle and liquidate the same; to sue for a partition in all matters in which the said Constituent may be a party, and, if necessary, to renounce all successions in which the said principal may be interested.

15. If the time comes when I can no longer take part in decisions for my own welfare due either to a

7

physical or mental incapacity, it is my express. intention and desire that this mandate shall survive my incapacity and there shall be no necessity for my attorneys to apply to any court for approval or authority to manage my affairs.

16.    If the time comes when I can no longer take part in decisions for my own welfare, and if there is no expectation of my recovery from physical or mental disability, I prefer to be allowed to die and not to be kept alive by artificial means or heroic measures.    I prefer that drugs be mercifully administered to me for terminal suffering even if they hasten the moment of death.  In fulfilling this preference, I authorize my Attorney to make these decisions on my behalf and fully authorize and empower all physicians, hospitals, medical care people and corporations, etc., to fulfill and further any decision so made by my Attorney.

And, generally, for the full execution of the purposes aforesaid, the said Attorney is hereby authorized and empowered to perform, and to make, sign and execute, in the name of the said Constituent, any and all acts and instruments of writing, with all usual and customary clauses, that shall or may be requisite and necessary, as being the said Constituent's own proper acts and deeds; and, also to do and perform all and every other act, matter and thing whatsoever conducive to the interest of Constituent whether the same be an act of administration merely or an act of alienation, as shall or may be necessary to further the business and concerns of the said Constituent, as fully, amply and effectually, and to all intents and purposes with the same validity, as if all and every such act, matter or thing were, or had been, herein particularly stated, expressed and especially provided for, or as the said Constituent could or might do if personally present; also with full power of substitution and revocation. The said Constituent does hereby agree to ratify and confirm all and whatsoever the said Attorney or his substitute shall lawfully do, or cause to be done, by virtue of this act of procuration.

This power of attorney is the same as a previous power of attorney executed by Mrs. Noel on August 19, 2002. The only differences being two misuses of the word "him" in the 2006 power of attorney and the following language at the end of Paragraph Fifteen in the 2002 power of attorney:  "This grant of authority shall include the power to make all decisions related to my health care including but not

8

limited to the selection and election of medical treatment, as well as the place, duration and scope of said treatment."

In finding that Samuel had authority to self-deal, the trial court relied on Paragraph Ten, which stated that Samuel was authorized to "transact all and singular the affairs, business and concerns of the Constituent of whatever nature or kind, without any exception or reservation whatsoever." The trial court, as did the Appellees, further relied on the fourth circuit's opinion in *Rutledge v. Hibernia Corp.*, 00-674, p. 11 (La.App. 4 Cir. 1/16/02), 808 So.2d 765, 771, which stated:

> However, when the legislature revised these laws in 1997 it did nothing to change the authoritative construction of the words "express authority" in articles 2996 and 2997. We therefore conclude the legislature intended for the word "express" authority to mean "written" authority in the revised articles.
>
> Significantly, when the new article 2998, concerning self dealing by a mandatary, was added to the civil code in the same 1997 revisions, no adjective was used to modify the word "authority." It seems clear to us, then, that the legislature, aware of the *Tedesco [v. Gentry Development, Inc.*, 540 So.2d 960 (La.1989)], holding, did not intend to require a writing for the principal to authorize his mandatary to self deal.

However, we find this reliance misplaced based on the fact that *Rutledge* dealt with movable property rather than immovable property. Moreover, the second circuit held that the principal's verbal instructions to the mandatary to self-deal were sufficient to state a cause of action by the mandatary in that matter as there was no specific authority allowing him to self-deal.

"Powers of attorney are construed strictly and no special authority is implied by the general terms of a procuration except ordinary powers of administration." *First Fed. Sav. & Loan Ass'n of Natchitoches v. Burrows*, 539 So.2d 685, 689 (La.App. 3 Cir. 1989) (citing *Bolton v. Rouss*, 144 La. 134, 80 So. 226 (1918), and La.Civ.Code arts. 2994-2996). Although these two opinions dealt with the prior

9

laws on mandate, the rules for interpreting mandate are unchanged.[3]

In *Standard Insurance Company v. Spottsville*, 16-20, p. 7 (La.App. 1 Cir. 9/16/16), 204 So.3d 253, 259, the first circuit held that the "catch all phrase" appearing at the end of the subject power of attorney was insufficient to bestow the specific authority for the mandatary to change the beneficiary on the principal's insurance policy. That language, which allowed the mandatary to act in "any and all matters; without reservation of any kind and to the fullest extent allowed by law[,]" we find to be similar to that relied on by the trial court here. *Id.* Accordingly, we find that it was legal error for the trial court to conclude that Samuel was authorized to self-deal based on language more akin to the general authority granted by La.Civ.Code art. 2994.[4]

Samuel testified that his authority to self-deal was granted by Paragraph Twelve of the power of attorney, which grants him the authority:

> To sell, transfer, assign and convey to any and all person or persons or corporations, institutions, with all legal warranties, all or any parts of the real, personal or mixed estate of the said Constituent, either judicially or extra judicially, for such price and upon such terms and conditions that the said Attorney may think fit; to receive the price of such sales, and to grant receipt and acquittance therefore.

Based on our interpretation of the language, we find that although Samuel was authorized to sell Mrs. Noel's immovable property, he was not authorized to sell that property to himself as there was no specific authorization allowing him to self

---

[3] The current versions of La.Civ.Code arts. 2994-2996 were enacted by 1997 La. Acts No. 261, § 1, effective January 1, 1998. The prior versions were as follows: (1) La.Civ.Code art. 2994, pertaining to general or special mandate, stated that a mandate "may be either general, or special for one affair only[;]" (2) La.Civ.Code art. 2995, pertaining to indefinite or restricted authority, stated, "It may vest an indefinite power to do whatever may appear conducive to the interest of the principal, or it may restrict the power given to the doing of what is specified in the procuration[;]" and (3) La.Civ.Code art. 2996, pertaining to the powers conferred by mandate, stated, "A mandate conceived in general terms, confers only a power of administration. If it be necessary to alienate or give a mortgage, or do any other act of ownership, the power must be express."

[4] La.Civ.Code art. 2994 provides, "The principal may confer on the mandatary general authority to do whatever is appropriate under the circumstances.

10

deal concerning the immovable property of Mrs. Noel.

Nor do we find that Samuel satisfied the second part of La.Civ.Code art. 2998, as found by the trial court. Louisiana Civil Code Article 2998 (emphasis added) provides that "[a] mandatary who represents the principal as the other contracting party may not contract with himself unless he is authorized by the principal, *or, in making such contract, he is merely fulfilling a duty to the principal.*"

It was Mrs. Noel's intention that each of her children receive certain tracts of immovable property from her estate, as specified in her February 28, 2003 testament:

> For and in consideration of the love and affection I have for my children, I give and bequeath unto them, free from any claim of collation or accounting, my interest if any, in the remaining portions of any tract or tracts where I have already conveyed or joined in the conveyance of an undivided interest. This is a general statement of intent to be interpreted by my succession representative such that the donations which were made during my lifetime, including those donations which were made after the execution of this will, are continued and concluded upon my death. In furtherance thereof, the following is a list of the tracts utilizing a general description, as opposed to the full legal description, and the individual to whom my interest, if any, is to be bequeathed.

Included in the list of tracts are properties that Samuel, as Mrs. Noel's attorney-in-fact, sold to himself and his wife and to his friend and business partner, Ross Hebert. Four of the sales involved property that Mrs. Noel intended for Catherine; three involved property she intended for Christine; and two involved property she intended for Theodule, Jr. Additionally, on April 9, 2008, Mr. Noel, Sr. and Samuel, as Mrs. Noel's attorney-in-fact, sold property located at Cypremort Point to Dr. Samuel H. Shuffler for $390,000.00. On September 23, 2008, Mr. Noel, Sr. and Samuel, as Mrs. Noel's attorney-in-fact, executed predial servitudes of passage, aqueduct, and use over and across three tracts of property Mrs. Noel

11

intended for Christine, for the benefit of property Samuel already owned and that he and his wife purchased through his self-dealing. We further note that none of the properties Mrs. Noel intended to bequeath to Samuel were involved in any transactions.

In its reasons for ruling, the trial court stated that "[i]t is uncontested that the appraised value of the tracts were paid by all of the purchasers[,]" and that Samuel "paid to the principal the appraised value of the property, and thus the dealing was not gratuitous and the transactions are distinguishable from those cases wherein an agent donates to himself." However, no evidence was introduced at the trial on the merits regarding the appraised value of the properties sold.

In their motion for partial summary judgment in the prior appeal, the Appellees argued that the "undisputed facts show that each of the contested transactions are cash sales made for fair market value or above, and none are donations." The Appellants opposed this claim, arguing that "[p]roperty values are not the standard against which these efforts (self-dealing) are to be judged, for what is sold today from [Samuel] to [Hebert] can be resold/transferred from [Hebert] to [Samuel], thereby allowing [Samuel's] reacquisition of the Noel farms[.]"

We agree that property values are not the standard upon which self-dealing is determined. Rather, the standard is based on the authority granted to or the duty fulfilled by the mandatary. No exception for payment of fair market value or above was contemplated by the legislature as justification for self-dealing. Moreover, in his reconventional demand against the Appellants, Dr. Shuffler claimed that he received an offer of $700,000.00 for the Cypremort Point property he purchased for $390,000.00.

12

We further note the following language included in the June 22, 2010 act of sale (emphasis added), wherein Samuel, while Mrs. Noel's attorney-in-fact, and his wife purchased property that Mrs. Noel intended for Catherine:

> This sale is made and accepted for and in consideration of the price and sum of Eighty-five Thousand and 00/100 ($85,000.00) Dollars; as appraised by Broussard Appraisal dated April 14, 2010, which amount the said Vendee have paid in ready current money unto said Vendor, who hereby acknowledges the receipt thereof and gives full acquittance for same, and *is further premised upon the conduct of our children in their abandonment and open displays of ingratitude and disrespect, and further, our desire to remove the possibility that this conduct will not be continued or used to undermine the ability to continue our farming operations.*

Mr. Noel, Sr. admitted in the act of sale that this property was Mrs. Noel's separate property.

It is undisputed that Mrs. Noel was suffering from dementia, whether Alzheimer's or vascular, at the beginning of 2007, and that Dr. Craft indicated that she was incapable of managing her own affairs as of March 8, 2007. It is further undisputed that Mrs. Noel suffered a stroke in April 2007, and that she passed away on January 19, 2012. Based on the progressive nature of dementia, Mrs. Noel could not have had the mental capacity to direct Samuel to include the disinheritance-language in the June 12, 2010 cash deed. Therefore, the only logical conclusion is that the language was inserted by Samuel for his own benefit, namely the convenience of his farming operations. Accordingly, we find that Samuel was acting for himself, rather than Mrs. Noel, when he sold the property at issue to himself and his wife.

Based on the foregoing, we reverse the judgment of the trial court finding that Samuel was authorized to self-deal under the terms of the January 12, 2006 power of attorney. We further find that because the language in Paragraphs Ten and Twelve of the power of attorney was identical to that in the August 19, 2002

13

power of attorney, neither power of attorney authorized him to self-deal. Since this finding renders moot the question of her mental capacity, we vacate the trial court judgment finding that Mrs. Noel had the mental capacity to execute the January 12, 2006 power of attorney. *Cat's Meow, Inc. v. City of New Orleans through Dep't of Finance*, 98-601 (La. 10/20/98), 720 So.2d 1186. For the same reason, we need not address the Appellants' assignments of error addressing this issue or the Appellees' motion to strike.

As a result of our finding that Samuel was not authorized to self-deal, we remand this matter for a trial on the merits on the Appellants' claims of fraud, breach of fiduciary duty, conversion, simulation, and a claim for accounting by Samuel, as mandatary. Pursuant to this order, the parties are allowed to conduct relevant discovery pertaining to the issues before the trial court. La.Code Civ.P. art. 1422. This ruling renders moot the Appellants' assignment of error relative to these claims. Finally, we find no merit in the Appellants' argument that the trial court erred by refusing to allow them to depose the Appellees' counsel. This issue was addressed when we denied writs in *Noel, Jr. v. Noel, Sr.*, 15-1193 (La.App. 3 Cir. 1/20/16) (an unpublished writ), finding that there was "no error or abuse of discretion in the trial court's rulings."

## DISPOSITION

For the foregoing reasons, we vacate the judgment of the trial court finding that Mrs. Noel was mentally competent to execute the January 12, 2006 power of attorney; we reverse the judgment of the trial court finding that Samuel J. Noel was authorized to self-deal under the terms of the January 12, 2006 power of attorney; and we remand the matter to the trial court for further proceedings. Costs of this appeal are assessed to Samuel J. Noel, individually and as executor of the

14

Succession of Theodule P. Noel, Sr., and Pamela A. Noel.

**JUDGMENT VACATED IN PART; REVERSED IN PART; AND REMANDED.**

15