# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 21-497

**THEODULE P. NOEL, JR., ET AL.**

**VERSUS**

**THEODULE P. NOEL, SR., ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 96657
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**SHANNON J. GREMILLION**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Candyce G. Perret, and J. Larry Vidrine,\* Judges.

**EXCEPTIONS DENIED.  AFFIRMED IN PART AND REVERSED IN PART, AND REMANDED.**

**Ralph Edward Kraft**
**Kraft Lege, LLC**
**600 Jefferson Street, Suite 410**
**Lafayette, LA 70501**
**(337) 706-1818**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Theodule P. Noel, Jr.**
    **Christine Noel Devenport**

---

\* The Honorable J. Larry Vidrine participates by appointment of the Louisiana Supreme Court as judge pro tempore.

**Thomas J. Gayle**
**Gayle Law Firm, LLC**
**713 Kirby Street**
**Lake Charles, LA 70601**
**(337) 494-1220**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Theodule P. Noel, Jr.**
    **Christine Noel Devenport**

**R. Chadwick Edwards, Jr.**
**Edwards & Edwards, LLC**
**P.O. Box 217**
**Abbeville, LA 70511-0217**
**(337) 893-2884**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Samuel Noel, individually and as Independent Executor of the**
    **Succession of Theodule P. Noel, Sr.**
    **Pamela A. Noel**

**GREMILLION, Judge.**

Plaintiffs, Theodule P. Noel, Jr. (Ted) and Christine Noel Devenport, appeal the summary judgment in favor of defendants, Samuel J. Noel, individually and as executor of the Succession of Theodule P. Noel, Sr., and Pamela A. Noel, on several causes of action and issues in the above daptioned matter. Defendants answered the appeal asserting exceptions and seeking review of the trial court's denial of summary judgment on certain issues. For the reasons that follow, we deny defendants' exceptions, affirm the trial court in part, reverse in part, and remand for further proceedings.

## FACTS, HISTORY, AND PROCEDURAL POSTURE

The essential facts of this matter are summarized in *Noel v. Noel*, 15-37, pp. 2-5 (La.App. 3 Cir. 5/27/15), 165 So.3d 401, 406-08, *writ denied vel nom, Noel, Jr. v. Noel, Sr.*, 15-1121 (La. 9/18/15), 178 So.3d 147:

> The allegations made by both parties to this suit center around a power of attorney[1] executed in 2006 and the sales of properties pursuant to that instrument. Mrs. Irene Joyce Trahan Noel ("Mrs. Noel"), now deceased, and Mr. Theodule P. Noel, Sr. ("Mr. Noel") were married and had four children of the marriage: Theodule P. Noel, Jr., Christine Noel Devenport, Catherine A. Noel, and Samuel J. Noel. Mr. and Mrs. Noel prepared last wills and testaments in 2005. Those documents established that Theodule Noel, Jr., Christine Devenport, and Catherine Noel were to receive certain parcels of property according to Mrs. Noel's will, while Samuel Noel would receive property according to Mr. Noel's will. Mrs. Noel allegedly executed a power of attorney, dated January 12, 2006, purportedly giving her son, Samuel Noel, authority to conduct various acts on her behalf, including the sale and transfer of property. In addition to their wills, Mr. and Mrs. Noel had previously made several inter vivos donations of property to their children, then executed farm lease agreements related to those properties, which established their children as lessors and Mr. and Mrs. Noel as lessees.
>
> In 2007, Mrs. Noel suffered a stroke, after which her health steadily declined. The parties disagree about the status of Mrs. Noel's

---

[1] Pursuant to La.Civ.Code art. 2989, a "power of attorney" is known in Louisiana as a "mandate," "a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal." For simplicity and consistency, we will refer to Mrs. Noel's mandate as a power of attorney.

health prior to her stroke. However, Appellants allege that beginning in December 2005, Mrs. Noel began experiencing a mental decline, which was exhibited by confusion, lack of awareness and memory, as well as her continual inability to dress and bathe herself. Appellants filed a petition for interdiction of Mrs. Noel on May 9, 2011. Service was not effectuated on Mrs. Noel within the requisite time and the proceedings were not advanced.

Between 2008 and 2011, Samuel Noel, via power of attorney, and Mr. Noel executed several sales of Mr. and Mrs. Noel's property. Those sales were made to Samuel Noel himself, his wife, Pamela Andrepont Noel, Ross Hebert, and Dr. Samuel Schuffler. The properties sold included those that Mrs. Noel had previously indicated in her will would be donated mortis causa to her other three children. Furthermore, Samuel Noel, via power of attorney, and Mr. Noel sublet the leased farm property belonging to Appellants to third parties, allegedly in contradiction of the lease agreement.

Mrs. Noel died on January 19, 2012. Her succession was opened on January 30, 2012, in a separate proceeding with Judge Marilyn Castle, but was not under administration. In that proceeding, Judge Castle appointed Catherine Noel as Executrix on April 8, 2013. Appellants initiated the current suit on January 15, 2013, to cancel the real estate transactions, alleging they were executed using an invalid power of attorney. Appellants asserted that the power of attorney could not have been signed on the day it is dated, as well as that Mrs. Noel lacked capacity at that time to sign a power of attorney. Appellants then filed a first supplemental and amended petition to cancel the farm leases for breach of the lease agreements, and to recover Farm Service Agency (FSA) payments and crop revenues. In his answer, Mr. Noel filed a reconventional demand seeking the revocation of inter vivos donations he made to Appellants between 1986 and 2003. Mr. Noel listed twelve acts of ingratitude committed by Appellants that he believed constituted cruel treatment and grievous injury sufficient to revoke the donations.

The trial court determined that plaintiffs had no right of action to bring the suit and granted summary judgment in favor of Mr. Noel and the defendants/appellees on the authenticity of the power of attorney. It further dismissed Mr. Noel's request to revoke the donations inter vivos. This court affirmed in part, reversed in part, and remanded to the trial court for further proceedings regarding the authenticity of the 2006 power of attorney, Mrs. Noel's capacity to execute the power of attorney, and the request to revoke the donations inter vivos on the grounds of ingratitude based upon plaintiffs' filing of the present

2

suit. Sometime after this opinion, Mr. Noel passed away. *Noel v. Noel*, 16-734 (La.App. 3 Cir. 8/2/17), 225 So.3d 1114, *writs denied,* 17-1817, 17-1839 (La. 1/9/18), 231 So.3d 651, and 17-130 (La. 1/9/18), 231 So.3d 654.

On remand, a trial was held solely on the issue of Mrs. Noel's mental capacity to execute the 2006 power of attorney. The trial court took the matter under advisement and ruled that Mrs. Noel possessed requisite mental capacity to execute the power of attorney, which, the trial court further ruled, authorized Samuel J. Noel to sell Mrs. Noel's property to himself. On appeal, this court held that neither the 2002 nor the 2006 powers of attorney authorized self-dealing on the mandatary's part. *Noel*, 225 So.3d 1114. Because the powers of attorney did not authorize self-dealing, we further vacated on the grounds of mootness the trial court's judgment finding that Mrs. Noel possessed the capacity to execute the 2006 power of attorney. *Id*. We remanded the matter for trial on the issues of "fraud, breach of fiduciary duty, conversion, simulation, and a claim for accounting by Samuel, as mandatary." *Id.* at 1124.

On October 2, 2020, defendants filed a motion for summary judgment to dispense with certain issues: simulation, unjust enrichment, conversion, breach of the farm leases, imposition of a La.Civ.Code art. 803 land management plan, continuing tort, validity of the sale to Ross Hebert, fraud, breach of Samuel's fiduciary duty as mandatary, validity of the 2006 power of attorney, an accounting by the mandatary, and defendants' assertion that there is an absence of damages. In support of their motion, defendants attached only the affidavit of Samuel Noel. That affidavit attested:

1. That he makes this affidavit of his own personal knowledge.

3

2. Affiant attaches hereto copies of the Farm Lease granted by Christine Noel Devenport and Theodule P. Noel and affirms the authenticity of both.[2]

3. Affiant affirms that all farm income and government payments which were due unto the owner of the lands covered by the Farm Lease, and the lands owned by Theodule P. Noel and/or Irene Joyce Trahan Noel, were paid both based upon their ownership and pursuant to the Farm Lease to Theodule P. Noel and Irene Joyce Trahan Noel until the death of Theodule P. Noel on August 5, 2015; including the interest conveyed in the contested sales.

4. Affiant affirms that the value paid for each of the contested transactions, except for the Scheffler [sic] sale, were not based upon the purchase of an undivided interest, but was calculated based upon the full market value or greater.

5. With respect to the language in Plaintiffs' Exhibits P-26, the June 22, 2010 sale, affiant had no participation in the drafting or insertion of any text into the sale.[3]

6. In each of the contested transactions the decision to sell, the price to be paid and the disposition of the funds was determined exclusively by Theodule P. Noel and affiant did not suggest or recommend this course of action.

The order fixed the matter for argument on November 9, 2020. Plaintiffs' opposition was filed on October 27, 2020. Opposing the motion, plaintiffs filed the deposition and affidavit of Dr. Ronald Lahasky, a board-certified internist; excerpts of the testimony of Dr. John Thompson, a board-certified forensic psychiatrist; excerpts of the testimony of Dr. David Craft; affidavits of Ted, Christine, Catherine A. Noel, Dan Robert Devenport, Ann Gauthier Noel, Matthew Joseph Devenport, Chris A. Miller; and the transcript of a hearing held in this matter on August 20, 2018. Further, plaintiffs objected to the timeliness of the hearing, which they contended was set less than thirty days from the date of service; to the affidavit of Samuel, which they contend was not served with the motion; to supporting

---

[2] There were no farm leases attached to the affidavit.

[3] This refers to an item found in plaintiffs'/ appellants' First Amended Exhibit List, which was filed with the trial court on September 4, 2020. The actual exhibit does not appear in the record as an attachment to the motion for summary judgment.

4

documentation, the farm leases, that were not attached to Samuel's affidavit; to the use of a letter from Chris Verret, which was incorporated by reference; to the use of responses to Requests for Production;[4] and the 2002 power of attorney, which was objected to on the grounds that it lacked authenticity.[5]

In brief, plaintiffs argued that notwithstanding this court's ruling on Mrs. Noel's capacity, the question of her capacity to execute the 2006 power of attorney remained an issue, as it impacts the claims regarding the sale of property to Ross Hebert. The deposition and affidavit of Dr. Lahasky indicate that Mrs. Noel lacked capacity to execute the power of attorney on January 12, 2006. This was confirmed by Dr. Thompson. Dr. Craft testified at the previous trial that Mrs. Noel suffered from a major neurocognitive disorder that impaired her social interactions and activities of daily living. The affidavits of Ted, Christine, Catherine, Dan, Ann, and Matthew each address Mrs. Noel's confusion and difficulties in the weeks surrounding the date of the 2006 power of attorney.

Mr. Miller is a CPA, Certified Valuation Analyst, Certified Fraud Examiner, and financial advisor retained by plaintiffs to provide forensic accounting for the purpose of establishing the income derived from the self-dealt properties and lost revenue opportunities. The affidavit sets forth the methodology Mr. Miller employed and attached his lengthy report, which set forth the value of the land sold to Mr. Hebert, examined the opportunity costs to Ted's rice and crawfish farming, the probable income derived from the self-dealt properties, and questionable transactions in Mr. and Mrs. Noel's bank accounts.

---

[4] These are not in the record as attachments to the motion for summary judgment.

[5] The 2002 power of attorney in not found in the record as an attachment to the motion for summary judgment.

5

At the hearing on the motion for summary judgment, plaintiffs reiterated their objections to the timeliness of the hearing and to the supporting documentation. They did not, however, request a continuance of the motion. After hearing arguments on the motion, the trial court granted summary judgment on the issues of simulation, unjust enrichment, conversion, breach of the farm leases, imposition of a La.Civ.Code art. 803 land management plan, and continuing tort. Summary judgment was denied on the issues of the mental capacity of Mrs. Noel, validity of the sale to Ross Hebert, fraud, breach of Samuel's fiduciary duty as mandatary, validity of the 2006 power of attorney, an accounting by the mandatary, and the claim that there is an absence of damages.

Plaintiffs appeal the grant of summary judgment. Defendants have answered the appeal and asked this court to review the denial of summary judgment on the other issues and have also urged exceptions of no cause of action regarding breach of the farm leases and res judicata.

## ASSIGNMENTS OF ERROR

Plaintiffs assert the following as errors:

1) The District Court erred in allowing and relying on evidence that was not permissible under La C.C.P. Art. 966(A)(1)(4), conducting a contradictory hearing less than thirty (30) days of service of the Motion for Summary Judgment and supporting documents in violation of La. C.C.P. Art. 966(C)(1)(b).

2) The District Court erred in dismissing Plaintiffs' claims for simulation where Defendant, Samuel J. Noel, following the "self dealing transactions" received the return of the purchase price, plus more from his father and where there were significant cash transactions after each sale.

3) The District Court erred in dismissing Plaintiffs' claims for conversion where Defendant, Samuel J. Noel, in bad faith self dealt Mrs. Irene Joyce Trahan Noel's property for his possession of same which precluded Mrs. Irene Joyce Trahan Noel the right to bequeath her property to her other children.

4) The District Court erred in dismissing Plaintiffs' claims for breach of lease where Defendants' actions without permission of the landowners violated the lease terms, constituted a material breach of the lease resulting in damages to the lessors.

5) The District Court erred in dismissing Plaintiffs' claim of continuing tort.

Defendants assert the following as errors of the trial court:

1. Appellants failed to present contrary evidence sufficient to establish the ability to present facts sufficient to meet their burden of proof at trial on one or more essential elements of their claims of: simulation; unjust enrichment; conversion; breach of the Farm Lease; imposition of an [sic] Civil Code article 803 land management plan; continuing tort; Mrs. Noel's mental capacity; the validity of the Ross Hebert sale; fraud; breach of fiduciary duty; validity of the 2006 power of attorney; and, mandatary accounting.

2. Appellants have failed to overcome known facts or support their unsubstantiated conclusions or assertions made upon information and belief:

   a. on January 12, 2006 Mrs. Noel suffered from a mental or medical infirmity which deprived her of the mental capacity necessary to grant the 2006 power of attorney;

   b. both the 2002 and 2006 powers of attorney are not valid and do not provide the requisite authority for the sales to Ross Hebert;

   c. there was a misrepresentation of a material fact made to Mrs. Noel with the intent of causing her harm, or that she was damaged;

   d. there was a breach of a fiduciary duty or that Mrs. Noel was harmed or damaged;

   e. Sam Noel had in his possession funds belonging to Mrs. Noel sufficient to require an accounting by a mandatary or to show a conversion or simulation;

   f. all of the duty-risk factors required for the tort claims are present;

   g. all causes of action against their father were withdrawn;

   [h.] the lands are incapable of partition; and

7

> [i.] that a breach of contract can be asserted against a third party to the contract[.]

Additionally, defendants have urged exceptions of no cause of action and res judicata. The court will first address those exceptions.

## ANALYSIS

### I. Exceptions

*Exception of No Cause of Action*

Defendants assert that paragraph 2 (E) of plaintiffs Third Supplemental and Amending Petition names Mr. Noel as a defendant, but that Paragraph 116 asserts that "Petitioners presently seek no damages from Theodule P. Noel, Sr." Because Mr. Noel died on August 25, 2015, and Samuel was named as executor of Mr. Noel's estate, defendants argue that Samual should be dismissed in his capacity as executor of the estate. We disagree.

The exception of no cause of action is intended to test the sufficiency of the petition to determine whether, assuming that all facts alleged therein are true, it asserts a demand upon which relief may be granted. *Dixon v. City of Alexandria*, 16-880 (La.App. 3 Cir. 5/31/17), 222 So.3d 739. Evidence is not accepted on an exception of no cause of action. *Id.* The determination on an exception of no cause of action is a legal one; therefore, it is reviewed de novo. *Id.*

The Third Supplemental and Amending Petition asserts that Mr. Noel and Samuel, acting as his mother's mandatary, sold several parcels of land to Samuel, Ross C. Hebert, and Samuel H. Shuffler, M.D.[6] The 114 paragraphs of the petition allege many acts on the part of Samuel. They allege no acts on the part of Mr. Noel other than his participation in the various sales. However, Mr. Noel's participation

---

[6] The sale of the property to Dr. Shuffler was not at issue in the motion for summary judgment.

in the sales of most of the properties was essential to the alienation of most of the properties because they were community property. In actions involving immovable property, owners in indivision are necessary for a just adjudication pursuant to La.Code Civ.P. art. 641. *See Olano v. Karno*, 20-396 (La.App. 4 Cir. 4/7/21), 315 So.3d 952. Rulings on the validity of the sales affects Mr. Noel's succession. The prayer for relief in the petition seeks cancellation of the various transactions, and only damages as an alternative relief; therefore, the exception of no cause of action is denied.

*Exception of res judicata*

Defendants assert that the trial court's January 25, 2016 judgment found that Mrs. Noel possessed capacity to execute the 2006 power of attorney. On appeal, *Noel*, 225 So.3d 1114, this court found that Mrs. Noel's mental capacity was rendered moot because neither the 2002 nor 2006 powers of attorney authorized Samuel to self-deal. *Id.*

Louisiana Revised Statutes 13:4231 governs res judicata. It provides:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
>
> (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
>
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

9

Mrs. Noel's capacity to execute the power of attorney was "actually litigated and determined" for purposes of La.R.S. 13:4231, but this court determined that the issue was moot. The determination of Mrs. Noel's capacity was not, therefore, "essential to that judgment." La.R.S. 13:4231(3). The exception of res judicata is denied.

## II.    Motion for Summary Judgment

*General provisions*

> Courts of appeal review summary judgments de novo applying the same analysis as the trial court. *Schroeder v. Bd. of Supervisors of La. State Univ.,* 591 So.2d 342 (La.1991). Summary judgment is governed by La.Code Civ.P. arts. 966 and 967. Article 966 provides that while the burden of proving entitlement to summary judgment rests with the mover, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. *Hardy v. Bowie,* 98-2821 (La.9/8/99), 744 So.2d 606.

*Berard v. Home State Cty. Mut. Ins. Co.*, 11-1372, p. 2 (La. App. 3 Cir. 5/9/12), 89 So.3d 470, 471-72. "The threshold issue to consider on summary judgment is whether the moving party carried [his] burden of proof. Only then does the burden of production shift to the party opposing the motion." *Id.* at 472.

After we decided *Berard*, La.Code Civ.P. art. 966 was significantly revised with regard to the documents that can be considered on motions for summary judgment. Paragraph (A)(4) now provides that only "pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions" may be filed in support of or opposition to a motion for summary judgment. More importantly, paragraph (D)(2) now provides (emphasis added), "The court may consider *only* those documents filed in support of or in opposition to the motion for summary judgment and shall consider any

documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum."

Louisiana Code of Civil Procedure article 966(B) governs service in summary judgments. It reads:

> B. Unless extended by the court and agreed to by all of the parties, a motion for summary judgment shall be filed, opposed, or replied to in accordance with the following provisions:
>
> (1) A motion for summary judgment and all documents in support of the motion shall be filed and served on all parties in accordance with Article 1313 not less than sixty-five days prior to the trial.
>
> (2) Any opposition to the motion and all documents in support of the opposition shall be filed and served in accordance with Article 1313 not less than fifteen days prior to the hearing on the motion.
>
> (3) Any reply memorandum shall be filed and served in accordance with Article 1313 not less than five days prior to the hearing on the motion. No additional documents may be filed with the reply memorandum.
>
> (4) If the deadline for filing and serving a motion, an opposition, or a reply memorandum falls on a legal holiday, the motion, opposition, or reply is timely if it is filed and served no later than the next day that is not a legal holiday.

Paragraph (C) provides for the holding of a contradictory hearing on summary judgments:

> C. (1) Unless otherwise agreed to by all of the parties and the court:
>
> (a) A contradictory hearing on the motion for summary judgment shall be set not less than thirty days after the filing and not less than thirty days prior to the trial date.
>
> (b) Notice of the hearing date shall be served on all parties in accordance with Article 1313(C) or 1314 not less than thirty days prior to the hearing.
>
> (2) For good cause shown, the court may order a continuance of the hearing.
>
> (3) The court shall render a judgment on the motion not less than twenty days prior to the trial.

The delays provided in paragraphs (B) and (C) can be waived. *McClure v. Target Corp.*, 19-758 (La.App. 3 Cir. 6/10/20), 298 So.3d 889. However, those delays are otherwise mandatory. *See Broussard v. Gulfport Energy Corp.*, 18-838 (La.App. 3 Cir. 6/5/19), 274 So.3d 175. A trial court has no discretion to allow a hearing to go forward in derogation of the limitations set forth in Article 966(B) and (C) unless agreed to by all of the parties. *Lewis v. Old Republic Ins. Co.*, 17-456 (La.App. 3 Cir. 8/23/17), 226 So.3d 557. Neither agreement of the parties nor waiver may be inferred from the filing of an opposition to the motion for summary judgment. *Id.*

*Consideration of extraneous documents and trial testimony*

In their statement of undisputed facts and legal principles, defendants reference a number of documents and the testimonies of individuals from previous proceedings. In brief, they argue, "This presents the unusual situation where the litigants and the court have actual knowledge of all the relevant material facts." This argument ignores the plain wording of La.Code Civ.P. art. 966(D)(2), which states that, "[t]he court may consider *only* those documents filed in support[.]" Defendants' argument lacks merit. We will only consider those documents filed with the motion or opposition.

*Assignment of error 1*

Plaintiffs argue that the hearing should not have gone forward because of deficiencies in service. The trial court fixed the hearing within the delays established by La.Code Civ.P. art. 966(B); however, service was made pursuant to La.Code Civ.P. art. 1313, and defendants' counsel's certificate of service indicates that the motion, order, and statement of undisputed facts and legal principles were served on October 5, 2020, but the memorandum in support thereof was not served until

October 14, 2020. Service of the notice of the hearing date is required within thirty days of the hearing date; therefore, service was proper.

Plaintiffs also argue that what purports to be Samuel's affidavit should not have been considered because it failed to meet the formal requisites of an affidavit in that the notary public's name was not printed, and the affidavit contains no bar or notary public number. Louisiana Revised Statutes 35:12(B) provides:

> Every document notarized in this state shall bear the notary identification number assigned by the secretary of state, except that if the notary is an attorney licensed to practice law in this state, he may use his Louisiana state bar roll number in lieu of his notary identification number. The number shall be typed or printed legibly and placed next to the typed, printed, or stamped name of the notary as required by Subsection A of this Section.

Paragraph (C) further requires that the notary indicate "his actual position or title from which his authority to notarize is derived, in addition to his notary identification number."

Our colleagues of the first circuit have held that the failure of a notary to include his name or notary number is not fatal to the document's consideration. *Gorman v. Miller*, 12-412 (La.App. 1 Cir. 11/13/13), 136 So.3d 834, *writ denied*, 13-2909 (La. 3/21/14), 135 So.3d 620. A "document reflects the definitive characteristics of an affidavit" when "it purports to be a writing made under oath, signed by the affiant, and [is] notarized." *Id*. at 841. We agree. Samuel's affidavit constitutes a writing made under oath, signed by him, and notarized.

We find that plaintiffs' first assignment of error lacks merit.

*Assignment of error 2*

"A contract is a simulation when, by mutual agreement, it does not express the true intent of the parties." La.Civ.Code art. 2025. An absolute simulation is a simulation in which "the parties intend that their contract will produce no effects between them." La.Civ.Code art. 2026. An absolute simulation has no effect

13

between the parties.  *Id.*  A simulation in which the parties intend that the contract will produce different effects than those expressed therein is a relative simulation. La.Civ.Code art. 2027.

Plaintiffs assert that Samuel purchased several properties for $202,146.00, but that Mr. Noel donated $525,000 in municipal bonds to Samuel.  Further, Samuel has maintained that Mr. and Mrs. Noel continued to receive the fruits from the properties.

Samuel's affidavit asserts that the value paid for each of the contested sales was based upon fair market value.  On the other hand, the affidavit of Mr. Miller, who performed forensic examination of the Noels' financial records, submitted an affidavit in opposition to the motion.  Mr. Miller's examination of two of the self-dealt real estate transactions showed that shortly after each, investment funds owned by the Noel's were redeemed, and only the difference between the sale price and the amount redeemed was deposited into the Noel's bank account.  In June 2009, Samuel purchased forty acres for $40,000.00; the next month, some bonds were redeemed for $50,000.00, but only $10,000.00 was deposited into the Noel's bank.

Mr. Miller went further:

In July 2010, the Defendant was noted to have purchased from the Parents [sic] land for $85,000.  The $85,000 sales proceeds was [sic] deposited into a checking account owned by the Parents.  Three months later in October 2010, an investment (bond) owned by the Parents was redeemed totaling $100,000 (via check from their investment broker). This check was deposited into the Parent's account.  During the same month, two checks made payable to "Cash" were written out of the Parent's [sic] same bank account totaling $90,000. At this time, we do not have copies/images, of the checks to determine the endorsement of the checks or information as to whether the cash was deposited elsewhere or used.

Due to a lack of documentation being available to reflect a valid reason for the withheld/withdrawn cash listed . . . above, these transactions may be viewed under a "step transaction" methodology in which transactions which appear to be unrelated are actually related and potentially used to conceal or distort the true purpose of the transactions being initiated.   The timing of cash paid/deposited/withdrawn highlighted . . . above could be viewed as an attempt to reimburse one's

14

self [sic], with the use of non-traceable cash, for sales proceeds provided in conjunction with the land purchases.

Mr. Miller's affidavit demonstrates that, at least with regard to some of the transactions, a genuine issue for trial exists as to whether the sales to Samuel were simulations. Expressing that the contract is a sale when it is in fact a donation certainly represents a simulation. The relevance of this issue lies in what reimbursement, if any, defendants are entitled upon return of the self-dealt land. Accordingly, we reverse the trial court's grant of summary judgment on the issue of simulation.

*Assignment of error 3*

"A conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion." *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So. 2d 756, 760 (La. 1985). This court has already held that the powers of attorney did not authorize Samuel to sell the various properties to himself as his mother's mandatary. *Noel*, 225 So.3d 1114. However, Samuel's affidavit establishes that fair market value was paid for the properties. Whether that is true is called into question by Mr. Miller's affidavit. Further, this court has already held that Samuel was not fulfilling his duty as mandatary for his mother. *Noel*, 225 So.3d 1114. Mrs. Noel unequivocally expressed a desire to bequeath the self-dealt properties to her other children and was deprived of fulfilling that desire by the self-dealing. We reverse the trial court's grant of summary judgment on the issue of conversion.

*Assignment of error 4*

At some point, Mr. and Mrs. Noel donated parcels of land to plaintiffs and leased the property back from them. Plaintiffs complain of the trial court's grant of

15

summary judgment on the cause of action for breach of the farm leases. Samuel's affidavit asserts, in pertinent part:

> Affiant affirms that all farm income and government payments which were due unto the owner of the lands covered by the Farm Lease, and the lands owned by Theodule P. Noel and/or Irene Joyce Trahan Noel, were paid both based upon their ownership and pursuant to the Farm Lease to Theodule P. Noel and Irene Joyce Trahan Noel until the death of Theodule P. Noel on August 5, 2015; including the interest conveyed in the contested sales.

None of the affidavits or documents filed by plaintiffs/appellants opposing the motion for summary counter this contention; however, the argument they put forward is that the leases were between themselves and their parents, who then breached the leases by subletting the farm property to Samuel and his business partner, Mr. Hebert.

> "The lessee has the right to sublease the leased thing or to assign or encumber his rights in the lease, unless expressly prohibited by the contract of lease. A provision that prohibits one of these rights is deemed to prohibit the others, unless a contrary intent is expressed. In all other respects, a provision that prohibits subleasing, assigning, or encumbering is to be strictly construed against the lessor." La.Civ.Code art. 2713.

Plaintiffs assert that the leases contain a provision against assignment or subleasing, yet the leases were not filed in opposition to the motion. Further, the lessees to the farm leases, Mr. and Mrs. Noel, are deceased. All parties agree that the farm leases are no longer in effect, having terminated with the death of Mr. Noel. Dissolving the sublease is normally the proper remedy when a clause prohibiting a sublease is violated. *Illinois Cent. Gulf R. Co. v. Int'l Harvester Co.*, 368 So.2d 1009 (La.1979).

While this assignment of error also purports to address the issue of a La.Civ.Code art. 803 land management plan, plaintiffs did not brief the issue. We, therefore, deem this aspect of the assignment of error abandoned. *See* Uniform Rules—Courts of Appeal, Rule 2—12.4; *McCorvey v. McCorvey*, 05-174 (La. App. 3 Cir. 11/2/05), 916 So.2d 357, *writ denied*, 05-2577 (La. 5/5/06), 927 So.2d 300.

This assignment of error lacks merit.

*Assignment of error 5*

Plaintiffs also allege that defendants have committed a continuing tort of trespass by continuing to occupy the properties at issue. "A civil trespass is defined as the unlawful physical invasion of the property or possession of another. *Dickie's Sportsman's Centers, Inc. v. Department of Transp. and Development*, 477 So.2d 744, 750 (La.App. 1 Cir.), *writ denied*, 478 So.2d 530 (La.1985)." *Pepper v. Triplet*, 03-0619, p. 23 (La. 1/21/04), 864 So. 2d 181, 197.

> [A]ll trespasses are not, by definition, continuous acts giving rise to successive damages. To determine whether a trespass is continuous, a court must engage in the same inquiry used to determine the existence of a continuing tort; i.e., the court must look to the operating cause of the injury sued upon and determine whether it is a continuous one giving rise to successive damages, or whether it is discontinuous and terminates, even though the damage persists and may progressively worsen.

*Hogg v. Chevron USA, Inc.*, 09-2632, 09-2635, p. 17 (La. 7/6/10), 45 So.3d 991, 1003-04.

Samuel's possession of the properties has already been ruled to have resulted from sales that are null. He continues to possess the properties. This creates a genuine issue of material fact regarding whether his possession constitutes a continuous tort. The trial court's ruling on this issue is reversed.

*Defendants' assignment of error 1*

Assignment of error 1 asserts that plaintiffs:

> failed to present contrary evidence sufficient to establish the ability to present facts sufficient to meet their burden of proof at trial on one or more essential elements of their claims of simulation; unjust enrichment; conversion; breach of the Farm Lease; imposition of an [sic] Civil Code article 803 land management plan; continuing tort; Mrs. Noel's mental capacity; the validity of the Ross Hebert sale; fraud; breach of fiduciary duty; validity of the 2006 power of attorney; and, mandatary accounting.

17

We have already addressed several of these matters, such as conversion, simulation, breach of the farm leases, and continuing tort. Plaintiffs have asserted that they did not plead unjust enrichment; further, unjust enrichment was not a theory on which this court remanded to the trial court. *Noel*, 225 So.3d 1114.

We reiterate our previous rulings: Mrs. Noel's mental capacity is not an issue in the case. *Id*. The validity of the powers of attorney is not an issue in this case, as neither authorized Samuel to self-deal. *Id*.

*Defendants' Assignment of error 2*

Defendants maintain that "[plaintiffs] have failed to overcome known facts or support their unsubstantiated conclusion or assertions made upon information and belief" regarding a litany of matters. Some of these were disposed of by this court previously or in this opinion, such as Mrs. Noel's mental capacity, damage to Mrs. Noel, withdrawal of the demands against Mr. Noel, and the breach of contract claims regarding the farm leases. With respect to the sale to Ross Hebert, we find that a genuine issue of fact exists regarding whether this action was primarily intended for the benefit of the principal, Mrs. Noel, which is the measure of the propriety of a mandatary's actions. *See Succession of McKinley*, 16-503 (La.App. 3 Cir. 12/7/16), 206 So.3d 959, *writ denied*, 17-0368 (La. 4/13/17), 218 So.3d 120.

We find that the validity of the powers of attorney is equally moot as to Mrs. Noel's capacity, as we have already determined that neither authorized Samuel's self-dealing. *Noel*, 225 So.3d 1114. We have already held that Mrs. Noel was deprived of the opportunity to bequeath the self-dealt and partner-dealt properties to her other children.

The only remaining issue raised in defendants' second assignment of error involves whether Samuel "had in his possession funds belonging to Mrs. Noel sufficient to require an accounting by a mandatary or to show a simulation or

18

conversion." We have similarly resolved the issues of conversion and simulation, leaving only the accounting issue to be resolved.

Louisiana Civil Code Article 3032 provides, "Upon termination of the mandate, unless this obligation has been expressly dispensed with, the mandatary is bound to account for his performance to the principal." We disagree with defendants' interpretation of Article 3032, namely that plaintiffs are required to show that Samuel had in his possession sufficient funds belonging to Mrs. Noel to trigger an accounting. An accounting is required on termination of the mandate under the plain wording of the article.

In *In Re Succession of Twine*, 10-228 (La.App. 5 Cir. 11/9/10), 54 So.3d 71, our colleagues of the fifth circuit affirmed an accounting by the granddaughter/mandatary of the plaintiffs' deceased mother. The fifth circuit held:

> Although the record does not contain a copy of the general mandate executed by the decedent, there is no dispute between the parties that Vernice Simon acted as a mandatary prior to her grandmother's death. In this capacity, Louisiana law provides that Ms. Simon was obligated to account for her performance upon termination of the mandate.
>
> . . . .
> Generally, the mandatary is bound to account to the principal; however, in the present case, the accounting was requested after the death of the principal by the heirs of the principal. Nevertheless, universal successors acquire ownership of the estate upon the death of the decedent, and a successor may exercise rights of ownership with respect to his interests in a thing of the estate as well as his interest in the estate as a whole. La. C.C. arts. 935 and 938(A). These provisions allow the universal successors of an estate to step into the shoes of the principal and to request an accounting from the mandatary.

*Id*. at 73.

In that case, Ms. Simon objected to the accounting, in part, because it would permit the petitioners to delve into her personal finances. The fifth circuit held that to the extent any property was held jointly with the decedent, such an inquiry was required. The fifth circuit "fail[ed] to find applicable legal authority requiring . . .

19

an evidentiary hearing prior to the submission of an accounting required by law." *Id*.

The *Twine* case and the plain terms of La.Civ.Code art. 3032 require an accounting under the facts of the present matter. We find no merit to defendants' assignment of error regarding this issue.

## CONCLUSION

Defendants' exceptions are denied. The petition states a cause of action against Samuel Noel as succession representative of the succession of Theodule P. Noel, Sr. The issue of Irene Noel's capacity is not res judicata as the finding that the 2002 and 2006 powers of attorney did not authorize Samuel Noel to self-deal the properties at issue rendered that matter moot.

The trial court properly held the hearing in the above matter. Service of the order fixing the hearing on defendants' motions was timely under La.Code Civ.P. arts. 966(B) and 1313. The affidavit of Samuel Noel meets the formal requisites of an affidavit; it was sworn to, notarized, and signed by Samuel.

We reverse the trial court's grant of summary judgment on the issue of whether the sales to Samuel were simulated and on the issues of conversion and continuing tort. We affirm the trial court's ruling on the cause of action for breach of the farm leases. We deem the issue of the imposition of a La.Civ.Code art. 803 land management plan abandoned because it was not briefed.

Except to the extent we affirmed the trial court's ruling, we find no merit to defendant's assignments of error.

We remand the matter for trial on the issues annunciated in *Noel*, 225 So.3d 1114.

**EXCEPTIONS DENIED. AFFIRMED IN PART AND REVERSED IN PART, AND REMANDED.**