WING v. N. O. PUBLIC SERVICE, INC.

(February 16, 1931. Opinion and Decree.)
(March 23, 1931. Rehearing Refused.)

J. Edmund Ullman and Gerald Netter, of New Orleans, attorneys for plaintiff, appellee.

Ivy G. Kittredge, of New Orleans, attorney for defendant, appellant.

JANVIER, J. At about 8:30 o'clock on the night of September 3, 1929, plaintiff received injuries as the result of being struck and knocked down by a street car of defendant company. The car was proceeding on Tulane avenue towards Rampart street and plaintiff was attempting to cross the avenue from the upper side to the lower side. The accident occurred at a point some 50 or 60 feet after the car had crossed Saratoga street, but within the space regularly used by pedestrians in crossing Tulane avenue at that point, and which space was marked by the usual white lines placed on the pavement by the police traffic department of the city of New Orleans.

Plaintiff, in his petition and in his testimony, states that when he left the upper sidewalk of Tulane avenue he was confronted with considerable automobile traffic and that he made his way cautiously through it until he arrived on the inbound car track of defendant company, on which he was forced to stop because of automobiles passing in the other roadway. He says that he had been standing on the track for some time, unable to advance, when he was struck by the street car, which had approached at a rapid speed, and he charges that, had the motorman of the car been observant, he would have seen plaintiff and could have brought the car to a stop without injuring him. Plaintiff's story, therefore, is, in effect, a charge that, though he himself may have been to some extent negligent in stopping in a dangerous position—that is to say, on a car track—nevertheless, after he had reached that point on the track and could neither advance nor retreat, there was yet time for the street car to be brought to a stop, had the operator thereof been careful, and that, thus, under the doctrine of the last clear chance, recovery should be allowed him.

The motorman testified that, as his car approached, he saw Wing, the plaintiff, standing alongside the track and sufficiently far away from it to permit of the safe passage of the car and apparently waiting to board it, but that, at the last moment and when it was no longer possible for the car to be stopped, Wing, apparently frightened by an approaching automobile, stepped quickly, or jumped, into the front end of the street car.

On the first trial below the jury, by a vote of ten to two, returned a verdict for plaintiff for $250. This verdict was set aside by the court, ex proprio motu.

The matter was then again submitted to a jury in another division of the court and on the same evidence the second jury rendered a verdict for plaintiff for $2,322.68. From a judgment based on that verdict defendant has appealed.

That the speed of the car was moderate is now conceded, as it must be. It had come almost to a stop at Saratoga street,

only 50 or 60 feet away and, a short distance beyond the point of the accident, it was required to make another stop. Furthermore, after striking plaintiff, the car proceeded only about four or five feet, so it is quite evident that it must have been going very slowly as it approached. That the motorman was a competent operator is no longer denied. He had had several years' experience in operating street cars in this and other cities.

Three of plaintiff's witnesses, James, Baker and Granzin, attempted to corroborate plaintiff's story to the effect that he had been standing on the car track for some time before the accident occurred, but all of them had been engaged in conversation up to the moment of the accident and all stated that they saw neither the car nor plaintiff until the last second. Evidently, then, they did not really know whether plaintiff had been standing on the track for some time or had stepped in front of the car at the last moment. However, in the testimony of Baker and in that of Granzin appear statements rather contradicting plaintiff's allegation that he had been standing on the track for some time. The trial judge propounded certain questions to Baker, the answer to which indicated clearly that the true facts, as Baker saw them, were that plaintiff stepped in front of the street car when it was right on him:

(By the court):

"Q. Do you mean at the time Lee Wing stepped across that rail that the car was approximately four feet from him when he stepped across the rail?
"A. Yes, sir.
"Q. In other words, at the moment of his stepping across the rail the car was about four feet from him?
"A. Yes, I judge about that. He was looking in the other direction.

"Q. He was stepping in front of an oncoming car?
"A. Yes, but was watching the traffic from the other direction and the car made no sound.
"Q. He was watching traffic coming from towards the river and was not watching the traffic coming from the lake and stepped right in front of the car when it was four feet from him?
"A. Yes, sir."

And to the same effect we find, in the testimony of Mr. Granzin, on page 51, that Lee Wing was standing, apparently, in a safe position, when he was frightened by an automobile, and, as a result, stepped into the path of the car. He says:

"A. As he side-stepped the automobile the street car rang its bell and hit him on the shoulder."

This testimony to which we have referred, instead of corroborating the charge of plaintiff that he had been standing on the track for some time, rather bears out the story told by the motorman to the effect that plaintiff stepped on the track when it was no longer possible to bring the car to a stop. The motorman's statement, as it appears on pages 12 and 13 of his testimony, is as follows:

"A. He was crossing * * * I watched him approach my car until he stopped, and when he stopped I released my air and went on. * * * He was facing me with his head turned."

At that time, according to the statement of the motorman, Wing was about three feet from the track and in a safe position and standing still. The motorman continues:

"I didn't know whether he stopped for me to pass, or was waiting to board my car, but I saw that he was standing in safety and clear of the car and I continued to let my car roll * * *. An automobile came facing him—I didn't know what

street he came out of, but he was facing him and he became excited and jumped right in front of the car * * * applied my brake and rang my gong with all my might."

We have already referred to the speed of the car, but, in passing, let us again say that on this point the testimony of the three witnesses for plaintiff is proven to be entirely erroneous by the physical fact that the car stopped within only four or five feet after striking plaintiff. This would have been impossible had it been proceeding at the speed of twenty or twenty-five miles an hour, as testified to by the three witnesses to whom we have referred.

In the record may be found several statements which show inconsistencies in the testimony of plaintiff. He claims that he was rendered unconscious; yet he undertakes to recite in detail events which occurred immediately after he was struck. His claim as to the extent of his injuries is not borne out to our satisfaction. The doctor who had treated him some time prior to the injury was called in and paid him three visits for which he charged him ten dollars. Without assigning any reason for no longer sending for his regular doctor, he employed another doctor and states that he paid him $60 for six visits. The first doctor testified that, after the three visits, he did not again see plaintiff because he considered that he would be well in a week or ten days, and yet plaintiff claims that he was incapacitated for seven weeks.

We are convinced that the finding of the second jury below was manifestly erroneous.

The judgment appealed from is annulled, avoided and reversed and plaintiff's suit is dismissed at his cost.