# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 17-294


**MARY M. MATTHEW**

**VERSUS**

**LEILA B. MATTHEW**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 127227
HONORABLE LEWIS H. PITMAN, JR., DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## BILLY HOWARD EZELL
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Billy Howard Ezell, and Phyllis M. Keaty, Judges.


**AFFIRMED.**

**Jack Marks Alltmont**
**Eric M. Schorr**
**April L. Watson**
**Sessions, Fishman, Nathan & Israel, LLC**
**201 St. Charles Avenue, Ste. 3815**
**New Orleans, LA 70170-1052**
**(504) 582-1500**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Leila B. Matthew**

**Porteus Richard Burke**
**Burke and Cestia**
**P. O. Box 10337**
**New Iberia, LA 70562-0337**
**(337) 365-6628**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Mary M. Matthew**

**EZELL, Judge.**

Leila Matthew appeals a trial court judgment finding she donated jewelry to her daughter, Mary Matthew. At issue in this case is whether Leila intended to donate the jewelry to Mary or whether the jewelry was intended for Mary upon Leila's death.

## FACTS

Leila's mother, Leila Avery Brown McIlhenny (Mrs. McIlhenny), died on April 2, 1967, leaving three heirs: Leila, Anne Reily, and Alfred Brown, Jr. Prior to the events leading up to the present dispute, Alfred died, leaving three heirs. In February 2014, the heirs decided to divide between themselves family leases on Avery Island and Mrs. McIlhenny's jewelry, valued around $1,000,000.00, which had been in a bank box since her death. The jewelry was removed from the bank box and appraised.

Leila, Anne Reily, and Christian Brown, Alfred's son, met at Leila's house on Avery Island to divide the leases and jewelry. Christian participated in the division on behalf of himself and his siblings. The leases were divided into three equal lots. The three parties drew straws to decide the order in which they would choose the particular parcel of land with the lease they wanted. Christian chose first, Leila chose second, and Anne Reily allowed her daughter, Anne Sutherlin, the final choice because she planned on donating this lease to her daughter.

The jewelry was also divided into three equal lots based on the appraisals. There were two rings that each represented one of the lots, as the value of each ring was one-third of the total value of the jewelry. The third lot contained several pieces of jewelry which composed one-third the total value of the jewelry. Once again, the parties drew straws to determine the order in which they would pick which lot of jewelry they would receive. Anne Reily chose first and selected one

of the rings. Leila chose second, and her daughter, Mary, chose the lot containing several pieces of jewelry. Christian was then left with the other ring as his selection for the third choice.

After the process was complete, Mary left with the lot of jewelry she had selected. In December 2014, Leila asked Mary to return the jewelry. Mary responded with a letter stating that she was not returning the jewelry because it was a gift from her mother to her.

On July 15, 2015, Leila withdrew $222,109.39 from a Regions Performance Checking Account. The account was maintained for Mary's benefit, but Leila was listed as a co-signatory on the account.

On November 3, 2015, Mary filed suit against Leila for return of the funds. In response, Leila filed a reconventional demand seeking return of the jewelry. Leila also sought a temporary restraining order enjoining Mary from alienating the jewelry. Mary filed a motion for partial summary judgment seeking to be declared the owner of the funds in the Regions Performance Checking Account. Subsequently, Mary filed an exception of prescription relative to the action for revocation of the donation of the jewelry.

A hearing on the partial motion for summary judgment was held on June 24, 2016. The trial court determined that Mary was the owner of the Regions Performance Checking Account.

A trial on the issue of ownership of the jewelry was held on July 14, 2016. The trial court held that Leila donated the jewelry to Mary in February 2014 and declared Mary to be the owner of the jewelry. Judgment was signed on August 31, 2016. Mary appealed the judgment to this court. Mary's only issue on appeal pertains to the trial court's ruling finding that Mary is the owner of the jewelry.

## DISCUSSION

On appeal, Leila alleges that the trial court erred in disregarding her testimony that she did not intend to make a gift of the jewelry to her daughter at the present time. Leila also argues that the trial court erred in basing its judgment upon the "assumptions" or "feelings" of the witnesses. Leila argues that it was her intent that Mary receive the jewelry upon her death.

"A donation inter vivos is a contract by which a person, called the donor, gratuitously divests himself, at present and irrevocably, of the thing given in favor of another, called the donee, who accepts it." La.Civ.Code art. 1468. Donations inter vivos are to be made by authentic act unless otherwise permitted by law. La.Civ.Code art. 1541. "The donation inter vivos of a corporeal movable may also be made by delivery of the thing to the donee without any other formality." La.Civ.Code art. 1543.

The burden of establishing a donation inter vivos is on the donee who must prove the donation with strong and convincing evidence. *Butler v. Reddick*, 431 So.2d 396 (La.1983). Proof required to establish clear and convincing evidence requires more than a preponderance of the evidence would require, but less than what beyond a reasonable doubt would require. *Farrar v. Whaley*, 16-790 (La.App. 3 Cir. 2/1/17), 211 So.3d 449, *writ denied*, 17-409 (La. 4/13/17), 218 So.3d 626. The question of whether donative intent existed for a donation inter vivos is a factual issue which will not be reversed unless manifestly erroneous. *Id*.

In finding that Leila had the intent to irrevocably give the jewelry to Mary, the trial court made the following findings of fact:

> The Court finds there are many inconsistencies in LEILA's recollection of the events of that Saturday in February 2014. The Court also finds if MARY took the jewelry without LEILA's consent in February 2014, it is inconceivable to believe LEILA would wait nine months to ask MARY for the jewelry and then wait another

3

seven months to recoup the loss by withdrawing the money from MARY's account. The Court accepts the testimony of Christian Brown, Anne B. Reily, Anne Sutherland [sic] and MARY and finds:

> a.) LEILA was capable on the day of selection to choose the jewelry for herself; as she had done earlier with the property lease.

> b.) MARY was called by LEILA to be present for the jewelry selection for MARY to choose the pieces that MARY wanted.

> c.) LEILA did not want any of this jewelry for she had her own jewelry.

> d.) Christian Brown, Anne B. Reily and Anne Sutherland [sic], all felt MARY was choosing the jewelry for MARY's ownership.

> e.) MARY had control over which pieces to select; to the point of allowing the remaining few pieces be divided between Christian Brown and Anne B. Reily.

> f.) MARY possessed the jewelry from the date of the selection, even wearing some in public.

> g.) MARY knew Leila had given MARY the jewelry.

> h.) LEILA first asked MARY about the jewelry in December 2014 and it was July 15, 2015 when LEILA attempted to recoup the value of the jewelry by withdrawing $222,109.39 from MARY's account.

In 2004, Leila executed a limited power of attorney for medical purposes and general power of attorney in favor of Mary. Copies of these powers of attorney were introduced into evidence. Mary and her sister Prichard are the beneficiaries of their mother's assets pursuant to a will executed in June 2010. Mary testified that her sister has not been home in sixteen or seventeen years.

Mary testified that she moved to Avery Island in 2005 when her home in Waveland, Mississippi, was destroyed by Hurricane Katrina. After the move, Mary would bring mail to her mother daily and take her out for a drive if the weather was nice. She also did some grocery shopping and took her mother to

doctor's appointments. Mary would meet her mother at the gas station to put gas in her car.

At trial, Mary testified that she selected the jewelry because her mother told her it was going to be hers and she should pick it herself. Leila told Mary she did not want any of the jewelry because her personal jewelry was prettier. After Mary selected the jewelry, she went to her car to get a bag to place the jewelry and appraisals in. When Mary got ready to leave, her mother told her to "[w]ear it with all of my love." Mary said her mother never indicated that she wanted the jewelry back at that time. Mary testified that it was not until December that her mother called her and wanted the jewelry back.

Anne Sutherlin also testified at trial. She assumed Leila was giving the jewelry to Mary because Leila told Mary to choose the jewelry since it was going to belong to her. Anne Sutherlin was surprised that her aunt gave the jewelry to Mary, but noted that Mary maintained possession of the jewelry until she left. She did hear Leila say that her personal jewelry was prettier than her own mother's jewelry that they were dividing that day.

Depositions of the parties and witnesses were also introduced into evidence and revealed the following. Leila admitted that she loved her own jewelry better, so she asked Mary to choose for her. She further testified that Mary stole her mother's jewelry and walked off with it while she and her sister were standing on the porch. Leila stated that she yelled at Mary to come back with her jewelry. Leila testified that she asked Mary to give back the jewelry many times. Leila's memory was called into question when upon further examination, Leila testified that she could not remember ever giving Mary a power of attorney in her life.

Anne Reily testified that Leila said she had more beautiful jewelry than the jewelry that was being divided so Mary should choose. Anne Reily testified that

she presumed the jewelry was going to Mary because Leila told her to choose. Anne Reily remembered that Mary's selection of jewelry was placed in a bag, and at some point, Leila told Mary to take it. Mary then proceeded to get in her car, but Leila got mad as Mary was taking the jewelry to her car and asked for it back. Anne Reily stated that Leila wanted three or four pieces of jewelry to give to other grandchildren. However, Mary ended up taking all of the jewelry with her.

Christian testified that he did not know why Mary chose the jewelry instead of Leila, but assumed Mary was choosing jewelry for herself. He thought this as Anne Sutherlin had chosen a lease in place of Anne Reily, since that lease was going to be donated to Anne Sutherlin by her mother. Within a day or two after dividing the jewelry, Christian contacted Mary about purchasing some of the jewelry from her that she had selected. This email exchange was attached to Christian's deposition and shows that it took place between the parties on February 9, 2014. Christian also stated that he received a call from Mary months later asking him to call her mother and remind her that she gave the jewelry to Mary. He told Mary he did not want to get in the middle of it.

On appeal, Leila contends that she never intended to donate the jewelry to Mary. She only intended to bequeath the jewelry to Mary upon her death, referring to a 2014 will introduced into evidence. The will, which was in draft form only, left Mary "any and all jewelry of which I die possessed[.]" The draft will, which had a date of April 2014, did not leave anything to Leila's other daughter, Pritchard.

After reviewing the above evidence in the record, we cannot say that the trial court committed manifest error in its finding that Leila donated the jewelry to Mary. Leila chose her own lease when it was time but had Mary choose the jewelry. All parties were of the impression that Mary was choosing the jewelry

6

because it was going to be hers. Leila was present when Mary chose the jewelry and watched her place the jewelry in a container and then proceed to leave with the jewelry. There is only corroborating testimony that Leila may have wanted three or four pieces of jewelry before Mary left the house to give other grandchildren. As in *Terrell v. Terrell*, 26,863 (La.App. 2 Cir. 5/10/95), 655 So.2d 600, while Leila's actions may be considered a lack of donative intent, her actions could also be intended as a change of heart. Clearly, the trial court had enough evidence before it to conclude that Leila intended for Mary to have the jewelry when she chose it. The donation was complete once the jewelry had been chosen by Mary as directed by Leila.

For the above reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed to Leila Matthew.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal. Rule 2-16.3.