# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 24-418

**THOMAS ALLEN AND ELVA ALLEN**

**VERSUS**

**STATE OF LOUISIANA, DEPARTMENT**

**OF WILDLIFE AND FISHERIES AND DEVIN**

**BRYANT**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. C-2020-0269 B
HONORABLE C. KERRY ANDERSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## GUY E. BRADBERRY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Charles G. Fitzgerald, and Guy E. Bradberry, Judges.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**

**Sebastian Hoffpauir**
**Assistant Attorney General Trial Counsel**
**Louisiana Department of Justice, Litigation Division**
**556 Jefferson Street, 4th Floor**
**Lafayette, LA 70501**
**(337) 262-1700**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
> **State of Louisiana, Department of Wildlife and Fisheries**
> **Devin Bryant**

**Karen D. Murphy**
**Phyllis E. Glazer**
**Assistant Attorneys General Appellate Counsel**
**Louisiana Department of Justice, Litigation Division**
**1885 N. Third Street, 3rd Floor**
**Baton Rouge, LA 70802**
**(225) 326-6494**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
> **State of Louisiana, Department of Wildlife and Fisheries**
> **Devin Bryant**

**D. Grant Castillo**
**Todd A. Townsley**
**The Townsley Law Firm**
**3102 Enterprise Boulevard**
**Lake Charles, LA 70601**
**(337) 478-1400**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
> **Thomas Allen**
> **Elva Allen**

**BRADBERRY, Judge.**

In this vehicular accident case, the State of Louisiana, through the Department of Wildlife and Fisheries (LDWF), and its agent, Devin Bryant, appeal a trial court judgment granting a judgment notwithstanding the verdict in favor of Thomas Allen and his wife Elva Allen. Defendants argue that the trial court exceeded its authority in overturning the jury verdict finding Agent Bryant not negligent and assigning 25% of the fault to him, 15% of the fault to the LDWF, and 60% of the fault to Mr. Allen. Defendants also complain about the amount of damages awarded to the Allens and the trial court's assessment of court costs. Additionally, Defendants argue that the trial court committed manifest error in denying their motion for summary judgment asserting immunity under La.R.S. 56:65 and granting the Allens' motion in limine preventing Defendants from addressing the issue of immunity at trial.

## FACTS

In the late afternoon hours of September 7, 2019, Thomas Allen, who was seventy-three years old, and his wife Elva Annette Allen were traveling west on Parish Line Road in DeRidder. Agent Devin Bryant, a game warden with the LDWF, had parked his 2016 Dodge Ram 2500 on the side of the road at the bottom of a hill. The truck was parked 100 to 150 feet from the top of the hill and halfway into the westbound lane of travel. Agent Bryant testified that he was in the area investigating illegal baiting over a field for dove hunting. He did not leave any lights on his truck or mark the truck with any type of warning device, like a cone, to indicate that it was parked.

While Agent Bryant was in the back of the adjacent property investigating the hunting activities, Mr. Allen came over the hill as the sun was setting. Mr. Allen testified he saw the truck but thought it was going to pull out into the road because

of the way the tires were turned toward the roadway. He was travelling twenty-five to thirty miles per hour. Mr. Allen testified that his wife told him he was going to hit the truck, so he swerved and hit the rear bumper and went around the truck. Mr. Allen testified a car was coming, so he jerked back in front of the truck and hit it another time. As a result of the accident, the Allens claimed that Mr. Allen suffered injuries to his right shoulder and lower back and Mrs. Allen suffered injuries to her neck.

The Allens filed suit against Agent Bryant and the LDWF. The LDWF denied any liability but accepted vicarious liability for any negligence established on behalf of Agent Bryant. Following discovery, Defendants filed a motion for summary judgment, pleading immunity under La.R.S. 56:65 and La.R.S. 56:69. Defendants argued they were entitled to the immunity provided by La.R.S. 56:65 and are exempted from parking regulations under the circumstances pursuant to La.R.S. 56:69. The Allens filed a motion in limine to exclude evidence regarding immunity. A hearing on both matters was held on December 14, 2023. The trial court denied Defendants' motion for summary judgment. The trial court then granted the motion in limine prohibiting Defendants from asserting the immunity defense ruling, finding they failed to plead it as an affirmative defense as required by La.Code Civ.P. art. 1003.

Defendants sought supervisory writs on this matter to this court. They asked the court to grant their motion for summary judgment and dismiss the Allens' case. This court denied the writ application on January 12, 2024.

The case proceeded to trial before a jury on January 16, 2024, through January 19, 2024. After deliberating, the jury found that Agent Bryant was not negligent. With that finding, the jury did not have to make any more decisions. Judgment was

signed on February 6, 2024, dismissing the Allens' case against Agent Bryant and the LDWF.

The Allens filed a motion for judgment notwithstanding the verdict (JNOV) on February 14, 2024. The trial court granted the motion and entered judgment, finding Agent Bryant 25% at fault, the LDWF 15% at fault, and Mr. Allen 60% at fault. The trial court also awarded damages to both Mr. and Mrs. Allen.

On May 14, 2024, the Allens filed a motion to tax costs. The trial court taxed Defendants with 40% of the Allens' cost and cast the Plaintiffs with 60% of Defendants' cost. Judgment on both the JNOV and motion to tax costs was signed on June 10, 2024. The LDWF and Agent Bryant appealed the judgment.

## JUDGMENT NOTWITHSTANDING THE VERDICT

Defendants claim that the trial court erred in granting a JNOV arguing that the jury verdict is more than reasonably supported by the evidence. Defendants argue that they were not negligent and that the Allens did not meet their burden in proving that they were negligent.

In well-written and thorough reasons for granting the JNOV (footnote omitted), the trial court stated:

> As to whether 'life or property' was endangered by Agent Devin Bryant parking his truck in the roadway, this court finds that no reasonable and impartial juror could have concluded that it was not so endangered. The facts and inferences point so strongly and overwhelmingly in favor of a finding that Agent Bryant's parking endangered life or property that reasonable persons could not arrive at a conclusion that it did not. It seems obvious to the court that parking on a roadway, closely after and within 200 feet of the crest of a hill, and at sunset, would endanger life and property. . . . Here, there was an obvious likelihood that parking on the roadway under the above circumstances could seriously injure others and when balanced against the interest which Agent Bryant would have to sacrifice to avoid that risk (i.e. parking off the road where there was plenty of room and where his truck would have been more hidden) the behavior is even more unacceptable.

All of Agent Bryant's stated reasons for having to park his truck in the roadway, that he was in a hurry, that he was trying to conceal himself from hunters, that he didn't want to disturb the ground with his tires, and that he didn't want to park on private property, were subjective. I'm sure he believed at the time that what he did was okay and did not endanger life or property. But by any objective standard, parking in the roadway was not justified to relieve him of his duty to the motoring public. There was more than ample room to park clearly off the road. The ground was hard and dry. He could have easily parked entirely in the public right-of-way and entirely off the road. His vehicle would have been better concealed off the roadway and closer to the trees and brush of the fence line the further he got off the road. And he crossed the private property fence and walked onto the private property of the land owner [sic] nullifying any concern of not trespassing on private property. No reasonable juror could have found any objective reason or justification for Agent Bryant parking in the roadway.

The trial court then further stated:

Although it is clear from the testimony elicited at trial that Thomas Allen is not free from fault, it is equally as clear to the court that Agent Bryant's parking of his truck in the roadway was a substantial factor in causing the accident. There was nothing presented at trial which would lead this court nor any trier of fact to believe that this accident would have occurred had Agent Bryant's truck not been parked in the roadway. As such, it seems unquestionable that the actions of Agent Bryant were not only a but-for cause of the accident but also a substantial factor. It is the finding of the court that no reasonable and impartial juror could have come to a different conclusion.

After determining that Agent Bryant was negligent, the trial court then assessed the negligence of the LDWF, an issue the jury did not reach. In finding that the LDWF was negligent and at fault for the accident, the trial court stated:

[T]his court finds that it is more likely than not that the Louisiana Department of Wildlife and Fisheries was negligent in failing to adequately train and supervise Agent Bryant not to park in the roadway except in emergency or exigent circumstances and not to endanger life or property while doing so. The court further finds that the negligence of the LDWF was a proximate cause of this accident.

. . . .

The State of Louisiana Department of Wildlife and Fisheries is also individually liable for failing to train and supervise Agent Bryant on how parking in the roadway is dangerous to life and property and that

4

he should avoid same if at all possible and that if he must, he must employ adequate audible and visual signals, further for failing to supply Agent Bryant with sufficient safety equipment for when it is necessary to park on the roadway.

A JNOV is provided for in La.Code Civ.P. art. 1811 and pursuant to Paragraph (F) may be granted on the issue of liability, damages, or both. "A motion for JNOV presents the *legal question* of whether there is sufficient evidence to support a jury verdict." *Caskey v. Merrick Const. Co., Inc.*, 46,886, p. 11 (La.App. 2 Cir. 3/14/12), 86 So.3d 186, 196, *writ denied*, 12-847 (La. 6/1/12), 90 So.3d 442. The supreme court articulated the standard for granting a JNOV in *Anderson v. New Orleans Public Service, Inc.,* 583 So.2d 829, 832 (La.1991); *Davis v. Wal-Mart Stores, Inc.*, 00-445 (La. 11/28/00), 774 So.2d 84:

> A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.

There is a two-part inquiry when reviewing a JNOV. *Davis*, 774 So.2d 84. First, the appellate court must determine if the trial court erred in granting the JNOV using the same criteria the trial judge does in deciding to grant the JNOV. *Id.* Second, if the appellate court determines the trial court correctly applied its standard of review, the appellate court reviews the trial court's assessment of fault with a manifest error standard of review. *Id.* In this case there has been no assignment of error regarding the trial court's assessment of fault, only that the trial court erred in finding that Defendants had any fault. Therefore, our initial inquiry is whether the

5

evidence overwhelmingly supported a finding that Agent Bryant and the LDWF were negligent.

## NEGLIGENCE

In determining whether liability exists under the facts of a particular negligence case, Louisiana courts have adopted a duty-risk analysis. *Bourg v. Cajun Cutters, Inc.*, 14-210 (La.App. 1 Cir. 5/7/15), 174 So.3d 56, *writ denied*, 15-1253 (La. 4/4/16), 190 So.3d 1205, *writ denied*, 15-1306 (La. 4/4/16), 190 So.3d 1201; *Rubin v. State Farm Mut. Auto Ins. Co.*, 23-358 (La.App. 3 Cir. 4/11/23), ___ So.3d ___.

> Under this analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages.

*Bourg*, 174 So.3d at 62.

"The initial inquiry in a negligence action is whether the defendant owed the plaintiff a duty." *Rougeau v. Hosp. Serv. Dist. No. 2 of Beauregard Parish*, 22-749, p. 32 (La.App. 3 Cir. 7/26/23), 368 So.3d 1196, 1215, *writ denied*, 23-1157 (La. 11/15/23), 373 So.3d 76.

**Agent Bryant**

The Allens claim that Agent Bryant had a duty to refrain from parking in the highway pursuant to La.R.S. 32:141 (emphasis added), which provides in pertinent part:

> A. Upon any highway outside of a business or residence district, **no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway,** but in every event an

6

unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.

. . . .

C. **The driver of any vehicle left parked, attended or unattended, on any highway, between sunset and sunrise, shall display appropriate signal lights thereon, sufficient to warn approaching traffic of its presence.** If the vehicle is not removed from the highway within twenty-four hours, the provisions of R.S. 32:473.1(B) shall apply.

"This statutory duty is designed to prevent the risk of confused or inattentive drivers colliding with such obstructions." *Jenkins v. Hernandez*, 19-874, p. 9 (La.App. 1 Cir. 6/3/20), 305 So.3d 365, 373, *writ denied*, 20-835 (La. 10/20/20), 303 So.3d 315. "Whether stopping on the travelled portion of the roadway constitutes negligence depends upon the circumstances of each accident." *Id.*

The evidence in the record is undisputed that Agent Bryant parked his truck halfway into the road with the other half of the truck off the road. Agent Bryant stated that he was parking on the other side of bushes instead of the driveway to avoid detection by the hunters. Agent Bryant admitted he could have parked further off the road and had room to park fully off the roadway.

The evidence is clear that Agent Bryant could have parked his truck completely off the road without hindering his investigation. The weather was dry that day as was the ground, and nothing prevented Agent Bryant from parking fully off the roadway except his concern for causing damage to private property.

Officer Quincy Buckley investigated the accident. While he did not issue any citations regarding the accident, he testified that he would have personally parked one to two feet over to the side more and had his lights engaged. He noted that if Agent Bryant had parked completely off the roadway, the crash would never have

7

occurred. Officer Buckley testified that the sun was the main factor in the accident. Officer Buckley did testify that the truck was parked 100 to 150 feet from the top of the hill, and Mr. Allen had time to see the truck and drive around it but agreed that Mr. Allen had only two seconds to see the truck and react.

Defendants argue that Agent Bryant cannot be found negligent for the accident since he was immune from traffic regulations pursuant to La.R.S. 56:65. The trial court denied their motion for summary judgment on this issue. Defendants correctly point out that the denial of a motion for summary judgment is an interlocutory ruling which may not be appealed citing *U.S. Aircraft Insurance Group v. Global Tower, LLC*, 19-844 (La.App. 3 Cir. 5/20/20), 298 So.3d 214. However, the third circuit did further note that when there is an appeal from a final judgment, the appellate court may also review the interlocutory ruling. *Id.* However, under those circumstances the applicable standard of review is manifest error as opposed to a de novo review. *Id.*

We observe that this court previously denied supervisory writs on this issue. Still, "[a] denial of supervisory review is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction, and it does not bar consideration of the issue denied supervisory review when trial on the merits is had and an appeal is taken from a final judgment." *Levine v. First Nat'l Bank of Commerce*, 06-394, 06-439, p.6 n.4 (La. 12/15/06), 948 So.2d 1051, 1057 n.4.

We first observe that the trial court found that Defendants did not specifically plead the affirmative defense of immunity and granted the Allens' motion in limine as to claims of qualified immunity. However, as pointed out by Defendants, they did plead immunity in their answer in paragraph 26 by stating, "Defendants plead all other Affirmative Defenses which may be applicable including absolute,

qualified, statutory, and jurisprudential immunity." Therefore, we will now consider Defendants' claim that they are entitled to immunity pursuant to La.R.S. 56:65 and were not negligent for the accident.

A government official has the burden of proving the defense of qualified immunity. *La. Farms v. La. Dep't of Wildlife and Fisheries*, 95-845 (La.App. 3 Cir. 10/9/96), 685 So.2d 1086, *writs denied*, 97-486, 97-507 (La. 4/4/97), 692 So.2d 420, 422. Immunity granted by La.R.S. 56:65 is applicable if the agent "acted reasonably and in good faith, within the confines and color of his office as a wildlife and fisheries agent." *Theriot v. State Dep't of Wildlife and Fisheries*, 94-1536, p. 7 (La.App. 1 Cir. 4/7/95), 661 So.2d 986, 990, *writ denied*, 95-1617 (La. 10/6/95), 662 So.2d 1041.

In addition to finding that Defendants did not plead the affirmative defense of immunity, the trial court also further denied the application of the immunity defense under La.R.S. 56:65 finding that it "does not apply to a case such as this where the alleged victim of the tort liability is not a person that was the subject of 'any search, arrest, seizure, or other act.'"

Louisiana Revised Statutes 56:65(A)(emphasis added) provides:

Neither the department nor any enforcing officer, agent, or other employee of the department **shall incur any liability whatsoever for any search, arrest, seizure, or other act done by him in the good faith performance of his duties under this Chapter**. The attorney general may defend any employee of the department in any civil action in which the employee is a defendant as a result of acts performed in the course of his duties as an employee when the attorney general determines that the defense by the attorney general is required to protect the interests of the state.

Defendants claim that Agent Bryant is a commissioned wildlife and fisheries agent who was performing his LDWF enforcement duties at the time of the accident. It is Defendants' position that La.R.S. 56:65 is applicable because Agent Bryant's

actions were done in the good faith performance of his duties, and its application has been applied in other tort cases.

In this case it was the act of Agent Bryant parking his vehicle that caused harm to the Allens. While Agent Bryant was parking so he could check out a potential hunting violation, the act of parking the truck itself was not done in the performance of this duty. Defendants argued La.R.S. 56:69 in the lower court, governing immunity from parking by an LDWF agent, and they have quoted it in their brief. However, they have not argued any application of La.R.S. 56:69 on appeal. Regardless, La.R.S. 56:69 (emphasis added) provides that an LDWF agent may park irrespective of the Louisiana Highway Regulatory Act or other law "**so long as he does not endanger life or property.**" Louisiana Revised Statutes 56:69(C) provides **"[i]n all cases where life or property would otherwise be endangered audible and visual signals sufficient to warn motorists shall be used.**"

In *Williams v. State Through Dep't of Wildlife and Fisheries*, 95-2456 (La.App. 1 Cir. 11/20/95), 684 So.2d 1018, *writ denied*, 96-3069 (La. 3/7/97), 689 So.2d 1372, the first circuit was faced with the issue of whether wildlife agents were entitled to immunity under La.R.S. 56:65. The agents were using a boat to check on crab fishermen in a boat. As the agents approached the fishermen's boat, one agent reached down to move a night stick located on the floor of his boat. As the agent looked up, his boat ran over the gunnel of the fishermen's boat, striking one of the fishermen and causing the other to fall. The first circuit determined that the agent running the boat over the crab fishermen's boat was not reasonable, so there was no immunity.

In *Shephard on Behalf of Shephard v. Scheeler*, 96-1690, 96-1720 (La. 10/21/97), 701 So.2d 1308, a sixteen-year-old boy lost control of his vehicle and

slammed into a parish dump truck partially parked on the shoulder. The supreme court agreed with the trial court that had the dump truck been parked completely off the roadway, the accident that killed the passenger would not have occurred. The supreme court noted that La.R.S. 32:296 allows public entities to use the shoulder to conduct its official business, but it "does not allow those public entities to completely disregard the safety of others in using the shoulder." *Id.* at 1319. The supreme court further observed that the safety function is mitigated when the use is near the end of a curve in a rural highway.

After reviewing the record, we agree with the trial court that the facts point so strongly in favor of the Allens that reasonable people could not have concluded that Agent Bryant's action in parking his truck halfway in the road, after the peak of a hill at sunset, did not contribute to the accident. Agent Bryant had a duty to park his truck in such a way that it did not endanger life. There was no reason he could not park entirely off the road, which would have probably circumvented the accident. The Allens hit the truck which was parked halfway in their lane of travel. Agent Bryant should have exercised caution and ensured safety when parking his truck after the crest of a hill. We agree with the trial court that Agent Bryant's actions in failing to park completely off the highway was a cause-in-fact of the Allens' injuries because the accident would not have occurred if he had not been parked in the roadway. We find no manifest error in the trial court's finding that Agent Bryant was negligent in causing the accident.

We also find that Agent Bryant had a duty to park his truck in such a way that it would not endanger life or property. Agent Bryant's actions in parking his truck in the road under these circumstances endangered lives, and therefore, he is not entitled to immunity.

11

**LDWF**

The LDWF claims that the apportionment of fault to it of 15% has no legal or evidentiary basis. Agent Bryant agreed that he was not provided with cones, reflectors, or any other safety devices for parking by the LDWF. He also was not aware of any policy or procedure concerning the use of warning devices. As required by La.R.S. 56:69(C), these safety measures would have helped any oncoming motorists in seeing the truck in the roadway and would not have interfered with his investigation.

A governmental employer has a duty to exercise reasonable care in hiring and training its officers. *Roberts v. Benoit*, 605 So.2d 1032 (La.1991). At trial, Agent Bryant admitted that he was not trained in parking. Agent Bryant also admitted that when he was deposed, he was not familiar with the LDWF's policies and procedures for parking on the roadway. He also admitted that he knew of no LDWF policy or procedure for using cones or flares when vehicles are parked on the side of the road.

If Agent Bryant had put on warning lights or had warning devices to indicate that it was a parked vehicle, Mr. Allen would have known that the truck was parked in the middle of the westbound lane and not going to move. He may have had time to avoid hitting the truck.

Training would provide the necessary knowledge and skills for Agent Bryant to safely park his vehicle while performing his enforcement activities as an LDWF agent. Furthermore, LDWF could easily provide their agents with devices allowing them to safely park their vehicles. There were no warning devices whatsoever, like cones, reflectors, or lights, to indicate Agent Bryant's truck was parked in the highway. These type of warning devices would not have alerted any hunters to the fact that Agent Bryant was investigating potential hunting violations. There was not

enough time once the Allens evaluated the situation and realized that the truck was actually parked on the highway and not moving, for Mr. Allen to take evasive maneuvers. We find no manifest error in the trial court's assessment of fault to the LDWF.

## DAMAGES

Since the jury found no negligence on the part of Agent Bryant, it did not reach the issue of damages. Defendants argue that there is no legal or evidentiary support for the trial court's award of damages, which they claim are excessive.

In *Anderson*, 583 So.2d 829, the supreme court held that the trial court should make an independent assessment of damages once it grants a JNOV and make a de novo determination of the proper amount of damages to be awarded. *See also Pike v. Calcasieu Par. Sch. Bd.*, 18-996 (La.App. 3 Cir. 5/15/19), 272 So.3d 943, *writ denied*, 19-1196 (La. 10/15/19), 280 So.3d 611. Since the jury did not reach the issue of damages, this court need only address the issue of whether the trial court's award of damages was proper. *Minton v. GEICO Cas. Co.*, 16-592, 16-917 (La.App. 3 Cir. 3/8/17), 215 So.3d 290, *writ denied*, 17-603 (La. 5/26/17), 221 So.3d 856.

An appellate court reviews the trier of fact's award of damages under the abuse of discretion standard requiring a determination of whether the award is so high or so low in comparison to the injury that it shocks the conscience. *Barber Brothers Contracting Co., LLC v. Capitol City Produce Co., LLC*, 23-788 (La. 12/19/24), ___ So.3d ___ (on rehearing). Citing its prior decision in *Pete v. Boland Marine and Manufacturing Co., LLC*, 23-170 (La. 10/20/23), 379 So.3d 636, the supreme court held that a two-step process is applicable in appellate review of a damage award: (1) determine whether an abuse of discretion occurred by examining the facts and circumstances in the case before it while considering prior awards in

13

similar cases, and (2) if an abuse of discretion is found, the court then must consider the prior awards to determine the highest or lowest point which is within the trier of fact's discretion. *Barber Brothers Contracting Co.*, ___ So.3d ___. The supreme court observed that the review of prior awards is simply to serve as an illustration and supply guidance in the determination of damages. *Id.*

The definition of general damages and what items should be considered in assessing general damages was set forth in *Morgan v. Willis-Knighton Medical Center,* 456 So.2d 650, 658 (La.App. 2 Cir. 1984), as "those which may not be fixed with pecuniary exactitude; they instead involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification, or physical enjoyment, or other losses of life or lifestyle which cannot be definitively measured in monetary terms." *See also Sayre v. PNK (Lake Charles), LLC*, 15-859 (La.App. 3 Cir. 3/23/16), 188 So.3d 428, *writ denied*, 16-696 (La. 6/28/16), 192 So.3d 780. General damages "are inherently speculative in nature and cannot be fixed with mathematical certainty." *Bourg*, 174 So.3d at 70.

"Pain and suffering, both physical and mental, refers to the pain, discomfort, inconvenience, anguish, and emotional trauma that accompanies an injury." *McGee v. A C and S, Inc.*, 05-1036, p. 5 (La. 7/10/06), 933 So.2d 770, 775. Loss of enjoyment of life is defined as "detrimental alterations of a person's life or lifestyle or the person's inability to participate in the activities or pleasures of life that were formerly enjoyed before the injury." *Id.*

Since the trier of fact "is in the best position to evaluate witness credibility and see the evidence firsthand, it is afforded much discretion in independently assessing the facts and rendering an award." *Bourg*, 174 So.3d at 70.

## General Damages

**Thomas Allen**

The trial court awarded Mr. Allen a total of $425,000.00 in general damages as follows: $100,00.00 for past and future physical pain and suffering; $75,000.00 for past and future mental anguish or emotional distress; $100,000.00 for permanent disability; $100,000.00 for past and future loss of enjoyment of life; and $50,000.00 for loss of consortium. The trial court also awarded $101,547.85 for past medical expenses and nothing for future medical expenses. With a reduction for 60% of the fault assessed to Mr. Allen, the total damages award was $210,619.14.

Defendants argue that the awards to Mr. Allen for past and future pain and suffering, past and future emotional distress, permanent disability, and loss of enjoyment of life are excessive. Defendants also complain that the award for all of Mr. Allen's past medical expenses is excessive given the fact that none of the treatment would cure his injuries or even alleviate his pain to a significant extent. They agree that testimony could justify the award of some of the past medical expenses.

Mr. Allen explained that he started having pain later in the evening after the accident. He was not having this pain prior to the accident. Mrs. Allen confirmed that Mr. Allen's right shoulder was uncomfortable that evening. Mr. Allen explained that he must sleep in the recliner, so he does not roll on his shoulder. Four days after the crash, on September 11, 2019, Mr. Allen was still experiencing pain, so he went to Beauregard Memorial Hospital. An x-ray was taken of his right shoulder and a CT scan of his brain. He was diagnosed with a right shoulder contusion and acute sinusitis and given pain medication.

15

On October 7, 2019, Mr. Allen began treatment with Allied Health in Lake Charles under the care of Dr. John Crosby. Mr. Allen complained of right shoulder pain with extension and raising of the arm. He also reported low back pain that radiated down to the knee and was accompanied by weakness and tingling. Dr. Crosby ordered an MRI of the lumbar spine and an MRI arthrogram of the right shoulder. The MRIs were performed on October 23, 2019. The MRI of the back indicated disc bulges at L3-L4, L4-L5, and L5-LS1. The right shoulder MRI indicated a rotator cuff tear and severe tearing of the labrum.

Dr. Crosby testified that he saw no evidence that Mr. Allen's injuries predated the crash. Physical therapy was ordered for his right shoulder. Dr. Crosby also ordered an epidural for his low back pain and leg pain. When Mr. Allen returned, Dr. Crosby elected to treat the joints in Mr. Allen's lower back because his leg was feeling better. Dr. Crosby last treated Mr. Allen in September 2020 because Dr. Crosby left Allied Health.

Mr. Allen continued treatment at Allied Health with Dr. Michael Lane. Dr. Lane agreed that older people are more susceptible to injuries. He also agreed that a car crash could cause a rotator cuff tear and a torn labrum. Dr. Lane recognized that the Allens were involved in a second car crash in 2021 but testified that he was still complaining of back pain from this accident two months before the 2021 accident. He saw no evidence to indicate that the second crash caused or exacerbated Mr. Allen's injuries. He also saw no evidence of preexisting injuries as there was no limited motion prior to the accident. Dr. Lane related his treatment of Mr. Allen to the accident in the present case. Dr. Lane left Allied Health at the end of 2021, so Mr. Allen began treatment with Dr. Gasson Chaibon.

16

Dr. Chaibon testified at trial and stated that Mr. Allen had several different types of injections in his lower back. A round of medial branch nerve blocks helped Mr. Allen tremendously so he next received radiofrequency ablation. Dr. Chaibon explained that radiofrequency ablation heats tissue around the damaged nerve and intentionally damages it. The nerve does not function when damaged. However, Dr. Chaibon testified that the nerves do heal and can cause pain again. So, this procedure was repeated. His sacroiliac (SI) joint was also contributing to his pain, and two injections helped this area for over a year.

Dr. Chaibon testified that Mr. Allen was a forthcoming person and that his description of the injuries was consistent with the workup, MRI imaging, and the way he presents at his medical examinations. Dr. Chaibon explained that there is no treatment that will cure Mr. Allen's back pain. At the time of trial, Mr. Allen was still receiving treatment from Dr. Chaibon. He recommended continuing the procedures as long as he needed them to keep him functioning. Dr. Chaibon did not doubt that Mr. Allen's injuries prevented him from doing the things he liked. Dr. Chaibon agreed that Mr. Allen has arthritis but stated that most people do by the time they are forty years old. Mr. Allen was seventy-three years old at the time of the accident.

Mr. Allen was referred to Dr. Paul Fenn, an orthopedic surgeon, for treatment of his shoulder injuries by Dr. Crosby. Dr. Fenn explained that the function of the rotator cuff is to help the arm move. If the rotator cuff is torn, it hurts, resulting in the person's inability to lift anything. Mr. Allen also suffered with a torn labrum and torn bicep tendon that caused pain. Dr. Fenn also explained that very few people seek treatment for these types of injuries at first, instead trying self-treatment at

home. Eventually, the person seeks treatment at the emergency room as the person gets stiffer and sorer over the next few days.

Dr. Fenn explained that while Mr. Allen had a previous fall that hurt his shoulder, there was minimal treatment and pain at that time when he was treated by his family physician. Mr. Allen had full range of motion at the time of the x-ray on January 31, 2018, taken after the previous fall. There was never any need for further follow-up treatment after that fall.

Dr. Fenn testified that this is the type of crash that can cause the torn rotator cuff, torn labrum, and bicep tendon injuries Mr. Allen sustained. He explained that the body handles force and trauma differently as you age. As an example, Dr. Fenn explained that a fall from a seated position can injure an older person. Dr. Fenn also stated that Mr. Allen's injuries prevent him from lifting items above his waist. The injuries also prevent him from sleeping well at night.

When Dr. Fenn first examined Mr. Allen, he recommended a reverse total shoulder arthroplasty. By the time of trial, the only option for Mr. Allen as an older patient was shoulder replacement surgery. Mr. Allen was treated with two steroid injections in his arm. Mr. Allen testified that the injections help, but then the pain comes back. Without surgery, Mr. Allen's options are repeat injections and medication. Dr. Fenn testified that Mr. Allen will be in pain for the rest of his life. At the time of trial, Mr. Allen was seventy-eight years old. He explained that he does not want the shoulder surgery because he is diabetic and suffers with cardiac issues, and by the time he recovers, he will be eighty years old. He is also worried that he may not wake up from the surgery.

Dr. Carl Goodman, an orthopedic surgeon who examined Mr. Allen on one occasion for Defendants, testified people in their seventies are more susceptible to

injury. He agreed that a car crash can cause shoulder pain, a rotator cuff tear, and labrum tears. He also agreed that if Mr. Allen had full range of motion before the crash, then more probably than not he suffered a rotator cuff tear because of the crash. Although he did not understand how a sideswipe accident could cause an injury, he agreed that the treatment Mr. Allen received was necessary.

Prior to the crash, the Allens liked participating in cowboy reenactments. They participated with a group of friends and even built an old western town called Sabine Crossing where they spend time. Several of the friends testified at trial and explained that they would go on weekends when the weather permitted. Now, Mr. Allen can no longer help work in the western town or lift a gun for the reenactments. Fred Walker testified that Mr. Allen became depressed two months after the accident because of his shoulder pain.

Additionally, Mr. Allen testified that he and his wife like to travel to chuck wagon cooking events but cannot do that now either. He is unable to lift cast iron pots on the firepit, and his wife has to do most of the driving.

Comparing recent similar cases, we first look at *Rougeau*, 368 So.3d 1196, in which an EMT was injured when an emergency room nurse unexpectedly stopped a stretcher the EMT was pulling with her right arm. The district court granted the EMT's motion for JNOV finding that the nurse's negligence was a cause-in-fact of the injuries sustained by the EMT. As a result of the accident, the EMT suffered a torn labrum and torn rotator cuff. After granting the JNOV, the trial court awarded the EMT $261,000.00 in general damages. This court affirmed the award.

In *Fontenot v. Stevens*, 16-277 (La.App. 3 Cir. 9/28/16) (unpublished opinion) (2016 WL 5421262), *writ denied*, 16-1950 (La. 12/16/16), 212 So.3d 1173, the plaintiff sustained injuries following a rear-end motor vehicle accident. In addition

19

to neck and cervical pain requiring surgery, the plaintiff suffered a torn rotator cuff and torn labrum. After granting a JNOV in the plaintiff's favor, the trial court awarded damages in the amount of $450,000.00 for past and future physical and mental pain and suffering and $100,000.00 for loss of enjoyment of life. In addition to other damages, this court affirmed these awards, finding a reasonable basis for the award of damages.

We agree with the trial court that the damages Mr. Allen suffered were the result of this accident. It is clear that the injuries have resulted in lifestyle changes for Mr. Allen. He can no longer enjoy doing the activities that he once enjoyed. He suffers with pain daily and must sleep in a recliner. There is also no doubt that he will suffer with pain due to these injuries for the rest of his life. Considering the particular facts of this case and the cited cases above, we find no abuse of discretion in the trial court's award of damages to Mr. Allen for pain and suffering, emotional distress, loss of enjoyment of life and permanent disability.

**Loss of Consortium Damages**

**Thomas Allen**

Defendants also complain that the award of $50,000.00 for loss of consortium due to his wife's injuries is excessive since there was no evidence that during the time she was injured she was unable to do things around the house or unable to care for herself or Mr. Allen.

An award of damages for loss of consortium includes pecuniary elements such as loss of material services and support and nonpecuniary components such as loss of love, companionship, affection, aid and assistance, society, sexual relations, comfort, and solace. *Smith v. Ceasar*, 23-689 (La.App. 3 Cir. 6/26/24), 389 So.3d 1037, *writ denied*, 24-944 (La. 11/6/24), 395 So.3d 1176.

20

We do find that an award for loss of consortium to Mr. Allen was an abuse of discretion. There is no evidence in the record that there were any changes in the couple's lifestyle or that Mr. Allen was responsible for tasks that Mrs. Allen once performed due to her injuries. Therefore, we reverse the award of loss of consortium damages to Mr. Allen.

**Elva Allen**

The trial court awarded Mrs. Allen $24,000.00 for past and future physical pain and suffering, $50,000.00 for loss of consortium, and $8,370.00 for past medical expenses, and nothing for future medical expenses. Defendants complain only about the amount of damages awarded to Mrs. Allen for loss of consortium.

Mrs. Allen explained that she and her husband do not sleep in the same bedroom anymore since he must sleep in the recliner because he is always moaning and groaning because he cannot get comfortable. It is hard for her to sleep because he walks through the house trying to get comfortable. She stated that this has changed their marriage. Mrs. Allen testified that they argue a lot more. She also does most of the driving. Mr. Allen also cannot help around the house with maintenance anymore. Now his wife must mow the pasture with her cousin's tractor and bushhog. As previously stated, Mr. Allen's injuries prevented the Allens from enjoying any of the social activities they previously enjoyed together. The only place they really go anymore is to the doctor's office. This has been an ongoing situation for the couple since the accident in 2019.

The record is very clear that Mrs. Allen established a loss of society, companionship, and must now do tasks around the house that Mr. Allen once did. Many of these tasks were performed while she herself was healing from her injuries.

21

We find no abuse of discretion in the award of $50,000.00 to Mrs. Allen for loss of consortium.

**Special Damages**

Defendants allege that the award for all of Mr. Allen's past medical expenses is excessive, arguing that testimony indicated that none of the treatment provided would cure his injuries or even alleviate his pain to a significant extent.

"Special damages are those damages that can be determined with some degree of certainty." *Weir v. Kilpatrick's Rose-Neath Funeral Homes, Crematorium and Cemetaries, Inc.*, 54,030, p. 8 (La.App. 2 Cir. 9/22/21), 327 So.3d 618, 624; *Travasos v. Lafayette Par. Sch. Bd.*, 23-640 (La.App. 3 Cir. 6/12/24), 390 So.3d 480. Special damages must be established by a preponderance of the evidence and are reviewed pursuant to a manifest error standard of review. *Id.*

We agree with the trial court that Mr. Allen is entitled to recover all his past medical expenses. While the treatment he received did not cure his injuries, it did alleviate the pain temporarily. All of the medical professionals who testified agreed that the treatments Mr. Allen received were necessary for his injuries. We find no manifest error in the trial court's award for all of Mr. Allen's past medical expenses.

**COSTS**

Defendants' final assignment of error concerns the trial court's assessment of court costs. Defendants claim the trial court erred in assessing them with a portion of the Allens' costs. Based on its allocation of fault, the trial court assessed Defendants with 40% of the Allens' submitted costs of $77,733.92, totaling $31,093.57. The Allens were assessed with 60% of Defendants' costs of $13,918.83, totaling $8,351.30.

22

Pursuant to La.Code Civ.P. art. 1920, the trial court has broad discretion to assess costs in any equitable manner it deems fair. A trial court's assessment of costs can only be reversed by showing an abuse of discretion. *Hebert v. Richard*, 16-427 (La.App. 3 Cir. 11/2/16), 206 So.3d 251, *writ denied*, 16-2058 (La. 1/9/17), 214 So.3d 870. An assessment of costs may be made to reflect the percentage of negligence attributable to each party. *Bellard v. South Cent. Bell Tel. Co.*, 96-1426 (La.App. 3 Cir. 8/27/97), 702 So.2d 695, *writ denied*, 97-2415 (La. 12/12/97), 704 So.2d 1202. We find no abuse of discretion by the trial court in its assessment of court costs.

For the reasons set forth in this opinion, we affirm the trial court's grant of judgment notwithstanding the verdict in favor of Thomas and Elva Allen. The trial court's award of loss of consortium damages in the amount of $50,000.00 to Thomas Allen is reversed. The trial court's award of all other damages is affirmed. The trial court's taxation of costs is affirmed. Costs of this appeal are assessed to the State of Louisiana, through the Department of Wildlife and Fisheries (LDWF), and Devin Bryant.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**